# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Empire Indemnity Insurance Co. v. Chicago Province of the Society of Jesus*,
2013 IL App (1st) 112346**

---

| | |
|---|---|
| Appellate Court Caption | EMPIRE INDEMNITY INSURANCE COMPANY, Plaintiff-Appellee, v. THE CHICAGO PROVINCE OF THE SOCIETY OF JESUS, Defendant-Appellant (Donald J. McGuire, John Doe 116, John Doe 117, and John Doe 118, Defendants and Intervening Defendants; RLI Insurance Company and Mt. Hawley Insurance Company, Intervening Plaintiffs-Appellees; Pennsylvania General Insurance Company, Intervening Defendant-Appellee; First Nonprofit Insurance Company, Intervening Defendant and Intervening Plaintiff-Appellee; John Doe 119 and Does 1 through 20, Intervening Defendants). |
| District & No. | First District, First Division Docket Nos. 1-11-2346, 1-11-2653 cons. |
| Filed | May 13, 2013 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute as to whether defendant, an insured religious order, had coverage for the claims arising from allegations that one of its priests sexually molested minors, the trial court properly entered summary judgment for several of the insurers based on the findings that the underlying complaints triggered either the exclusion for "expected or intended" damages, the exclusion applicable if any executive officer, supervisory employee, director or trustee had actual knowledge of the abuse, or the limitation of coverage to molestation occurring during the term of coverage; however, the entry of summary judgment for one insurer that failed to provide complete copies of its policies was reversed and that cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CH-35007; the Hon. Martin Agran and the Hon. Lee Preston, Judges, presiding. |

| | |
|---|---|
| Judgment | Affirmed in part and reversed in part; cause remanded for further proceedings. |
| Counsel on Appeal | Peterson, Johnson & Murray, of Chicago (Jennifer L. Turiello, of counsel), for appellant. |
| | Stellato & Schwartz, Ltd. (Esther Joy Schwartz, Richard D. Foody, and Theodore W. Pannkoke, of counsel), Swanson, Martin & Bell, LLP (Daniel G. Wills, of counsel), and Tressler LLP (Michael J. Duffy and Ashley L. Conaghan, of counsel), all of Chicago, and Morison Holden & Prough, LLP, of Walnut Creek, California (Michael D. Prough, of counsel), for appellees. |
| Panel | JUSTICE DELORT delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1    The dispute we must resolve here is whether a Catholic religious order is insured for potential losses resulting from alleged molestation of minors by one of its priests. The defendant-appellant, the Chicago Province of the Society of Jesus (the Jesuits), appeals from orders granting summary judgment in favor of Empire Indemnity Insurance Company (Empire), First Nonprofit Insurance Company (FNIC), RLI Insurance Company (RLI), Mt. Hawley Insurance Company (Mt. Hawley), and Pennsylvania General Insurance Company (Pennsylvania General) (collectively, the Insurers), in an insurance coverage dispute regarding the five insurers' duty to defend lawsuits brought against the Jesuits. The Jesuits contend that the trial court erred in finding that: (i) the "expected or intended injury" exclusion in the Insurers' policies applied; (ii) the claims of John Doe 117 and his parents occurred before the FNIC policies incepted; (iii) the FNIC policies' "Condition 1.A" exclusion, regarding actual knowledge, applied; (iv) Pennsylvania General owed no coverage, where Pennsylvania General failed to produce copies of its policies; and (v) the allegations in the underlying claims did not potentially assert damages resulting from pastoral counseling activities. For the following reasons, we affirm in part, reverse in part, and remand.

¶ 2                            BACKGROUND

¶ 3    This case began when Empire filed a declaratory judgment action (which FNIC, RLI, Mt. Hawley, and Pennsylvania General eventually joined) seeking a finding that there was no

duty to defend the Jesuits against complaints filed by various alleged sexual abuse victims of defendant Donald J. McGuire, a former priest and member of the Jesuits.[1] FNIC issued one-year multiple-peril insurance policies, and Pennsylvania General issued one-year general liability policies. Empire, RLI, and Mt. Hawley each issued one-year umbrella liability policies.

¶ 4                                    The FNIC Insurance Policy

¶ 5      FNIC issued a nonprofit multiple-peril insurance policy effective from November 30, 1998, to November 30, 1999, and subsequently renewed the policy on an annual basis to November 30, 2004. The policy contained provisions covering "Bodily Injury and Property Damage Liability" as well as "Sexual Abuse or Sexual Molestation Liability." The bodily injury coverage provided in pertinent part that FNIC would pay sums that the Jesuits became legally obligated to pay as damages due to "bodily injury or property damage to which this coverage applies." This coverage was further limited to bodily injury and property damage occurring "during the Term of Coverage" and specifically excluded damages "expected or intended from the standpoint of the insured." The sexual abuse or molestation coverage stated that FNIC would pay damages that the Jesuits become legally obligated to pay "arising out of any actual, threatened, intentional or unintentional sexual molestation of any person to which this coverage applies."[2] The sexual abuse/molestation coverage was also limited to sexual abuse or molestation occurring "during the Term of Coverage" and, under "Condition 1.a," the coverage would be cancelled "if any executive officer, supervisory employee, director or trustee [had] actual knowledge of any act, incident or alleged act of sexual abuse or sexual molestation." The policy defined sexual abuse or sexual molestation as "the infliction of harm upon a person, by any employee, agent or representative or volunteer of [the Jesuits], whether such harm is physical, emotional or psychological in nature and is primarily sexually motivated."

¶ 6                                    The Pennsylvania General Policy

¶ 7      Pennsylvania General issued a one-year general liability policy beginning on November 30, 1990, and renewed the policy annually until November 30, 1998. The policy covered bodily injury liability and "Pastoral Counseling Professional Liability." The coverage for bodily injury liability excluded such injury "expected or intended from the standpoint of the insured," except for bodily injury "resulting from the use of reasonable force to protect persons or property." With respect to the pastoral counseling professional liability, coverage was excluded, *inter alia*, for damages arising out of: (i) "the willful violation of a penal

---

[1]The Jesuits do not appeal the trial court's denial of their own motion for judgment on the pleadings brought under section 2-615(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2008)).

[2]Subsequent policies removed the "any actual, threatened, intentional or unintentional" terms and provided coverage for damages "arising out of sexual molestation."

statute *** committed by or with the consent of the insured"; (ii) "the actual or alleged conduct of a sexual nature" (although Pennsylvania General agreed to defend the Jesuits in any suit seeking damages from such conduct until judgment was rendered); and (iii) dishonest, fraudulent, or criminal acts or omissions of the insured.

¶ 8                                    The Empire Policy

¶ 9        Empire issued a one-year umbrella liability insurance policy beginning on November 30, 2002, and renewed the policy annually to November 30, 2005. The policy indemnified the Jesuits for bodily injury liability caused by an "occurrence" in excess of a retained limit. An occurrence was defined as an "accident, including continuous or repeated exposure to substantially the same harmful conditions." The Empire policy also excluded coverage for bodily injury "either expected or intended from the standpoint of the insured."

¶ 10                            The RLI and Mt. Hawley Policies

¶ 11       RLI and Mt. Hawley both issued an umbrella liability policy to the Jesuits. RLI's one-year policy began November 30, 1990, and was renewed annually to November 30, 2001. Mt. Hawley's policy was effective from November 30, 2001, to November 30, 2002. Both policies provided bodily injury liability coverage, and as with the Pennsylvania General and Empire policies, they also excluded coverage for bodily injury "expected or intended from the standpoint of the insured."[3]

¶ 12                            The Underlying Litigation

¶ 13       Beginning in August 2007, various "John Doe" complainants (hereinafter, the John Doe complaints) sued the Jesuits, alleging that they had been either sexually abused or sexually molested by McGuire, then a priest and member of the Jesuits who had also been a "teacher and scholastic advisor" at Loyola Academy, a high school operated by the Jesuits. The complaints all alleged negligence, intentional infliction of emotional distress, and fraud against the Jesuits. Significantly, the complaints claimed that the Jesuits either knew or should have known of McGuire's abuse, because the Jesuits were first apprised of McGuire's abuse of minors in 1969, when another abuse victim, John Doe 84, reported to a Fr. Schlax, a Chicago Archdiocesan priest, that McGuire had sexually abused him. Fr. Schlax then allegedly reported that abuse to the Jesuits and officials at Loyola Academy, including its president, principal, and headmaster. The John Doe lawsuits further claimed that the Jesuits had subsequently received numerous other complaints of sexual abuse of minors by McGuire, all of which took place prior to the time of the abuse in the John Doe complaints. The complaints also all alleged that, despite this knowledge of McGuire's activities and propensity to abuse minors, the Jesuits did not report these allegations to law enforcement.

---

[3] Although the RLI's 1990 to 1993 policies did not contain a separate "expected or intended" exclusion (whereas subsequent RLI policies and the Mt. Hawley policy did), this exclusion was incorporated into the 1990 to 1993 RLI policies' definition of an "occurrence."

Instead, the Jesuits transferred McGuire and allowed him to "remain in ministry and travel around the world" solely to avoid scandal.

¶ 14    In August 2007, John Doe 116 filed a complaint against the Jesuits and McGuire, alleging that McGuire abused him from 1999 to 2003 while he was a minor. John Doe 116 amended his complaint in November 2007 and again in September 2008. In addition to the common allegations above, the second amended complaint also alleged that, after reporting his abuse by McGuire to Fr. Schlax, John Doe 84, his parents, and Fr. Schlax met with representatives of the Jesuits and Loyola Academy regarding these allegations. Following this meeting, John Doe 84 transferred to another Jesuit school and McGuire was removed from Loyola Academy in the middle of the year. John Doe 116 also claimed that, in addition to transferring McGuire, the Jesuits confidentially settled other victims' sexual abuse allegations against McGuire to avoid scandal.

¶ 15    In October 2007, John Does 117 and 118, who are brothers, filed a joint complaint also alleging sexual abuse by McGuire while they were minors. This complaint was amended in October 2008. In the amended complaint, John Doe 117 alleged that McGuire sexually abused him between 1988 and 1989 and then sexually molested him in 1992 and 1994. His brother, John Doe 118, claimed that McGuire sexually molested him in 2001 and had other "inappropriate sexual contact" with him in 2002. John Does 117 and 118 also alleged that John Doe 84 met with Jesuit and Loyola Academy representatives, after which John Doe 84 transferred schools and McGuire was removed from his position. Similar to John Doe 116, John Does 117 and 118 also claimed that the Jesuits secretly settled other allegations of sexual abuse by McGuire to avoid further scandal.

¶ 16    In April 2008, John Doe 119 filed a complaint against McGuire and the Jesuits also alleging that he had been sexually abused by McGuire as a minor beginning in June 1998. As with John Doe 116 and John Does 117 and 118, John Doe 119 also alleged that John Doe 84 met with the Jesuits and Loyola Academy officials prior to John Doe 84 transferring to another school and McGuire's removal from Loyola Academy.

¶ 17    In February 2009, John Doe 129 and John Doe 130 each filed individual complaints also alleging that they had been sexually abused by McGuire as minors. John Doe 129 alleged that he had been molested by McGuire from 1988 to 1998, and John Doe 130 alleged McGuire sexually abused him between 1990 and 1995. These complaints, however, did not allege a meeting between John Doe 84 and representatives of the Jesuits or Loyola Academy.

¶ 18    In addition to the John Doe complaints, John and Jane Doe, the parents of John Does 117 and 118, filed a complaint against the Jesuits and McGuire in September 2009 in the federal district court in Arizona (the John Doe parents' complaint). The John Doe parents' complaint alleged negligence, loss of filial consortium, and intentional infliction of emotional distress, and sought damages against the Jesuits and McGuire (whom they alleged the Jesuits supervised or employed) resulting from McGuire's alleged sexual abuse of their sons. This complaint also alleged that the Jesuits knew of McGuire's abuse of minors no later than 1969 and had been aware of other incidents between 1969 and 1988 (when the abuse of their son, John Doe 117, began), but resolved those claims confidentially in order to avoid scandal.

¶ 19                    The Declaratory Judgment Proceedings

¶ 20    The Insurers each filed various declaratory judgment actions seeking a finding that they had no duty to defend the Jesuits in the underlying lawsuits.[4] One of the first dispositive motions heard was FNIC's motion for summary judgment. This motion, which dealt with John Doe 116's first amended complaint and the original complaint of John Does 117 and 118, claimed in part that FNIC's policies excluded coverage because: (i) John Doe 117's claims took place after the effective date of the policies, and (ii) both the "expected or intended" exclusion and also "Condition 1.a" (regarding actual knowledge) applied. The trial court agreed, and granted FNIC's motion.

¶ 21    FNIC then filed a second motion for summary judgment, this time directed at John Doe 116's second amended complaint, the amended complaint of John Does 117 and 118, John Doe 119's amended complaint, and John Doe 129's original complaint. This second motion again claimed that the "expected or intended" exclusion and Condition 1.a barred coverage. The trial court denied this motion as to the second amended John Doe 116 complaint, but granted it against the other John Doe complainants. The trial court found that, unlike John Doe 116's original and amended complaints, the allegations of negligence in his second amended complaint did not include factual allegations that the Jesuits had actual knowledge of McGuire's abuse of John Doe 84.

¶ 22    On May 24, 2010, however, the trial court granted the Jesuits' motion to reconsider, which argued that the other complaints also did not include allegations of actual knowledge in their respective negligence claims. The trial court thus found that the claims asserted were either within or potentially within FNIC's policies, and concluded that FNIC owed a duty to defend.

¶ 23    FNIC then filed its own motion to reconsider that order. FNIC's motion argued that the supreme court's holding in *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446 (2010), required the trial court to consider all of the factual allegations in the various John Doe complaints before determining whether FNIC owed a duty to defend. FNIC thus concluded that the absence of the specific allegation of the Jesuits' knowledge of prior incidents of alleged sexual abuse within the negligence count was immaterial. On December 3, 2010, the trial court granted this motion, vacated its prior order, and found that FNIC owed no coverage based upon the allegations in the prefatory "Facts" section of the complaint (regarding the Jesuits's receipt of a report about McGuire's abuse of John Doe 84 in 1969 and their failure to warn the public of McGuire's behavior), which preceded the specific negligence allegations. As a result, the trial court found that the FNIC policies' "expected or intended" exclusion as well as Condition 1.a applied, barring coverage.

---

[4]The online case information for the circuit court of Cook County as well as the United States District Court for the District of Arizona indicate that the John Doe complaints and the John Doe parents' complaint have either been settled or dismissed by stipulation or agreement. This court may take judicial notice of the public documents that are included in the records of other courts. *Pfaff v. Chrysler Corp.*, 155 Ill. 2d 35, 75 (1992), *overruled on other grounds by ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526 (2010); Ill. R. Evid. 803(8) (eff. Jan. 1, 2011). At oral argument, none of the parties disputed that all of the cases have been settled.

¶ 24    Empire and Pennsylvania General then filed individual motions for summary judgment, and Mt. Hawley and RLI filed a combined summary judgment motion. The motions argued that these insurers were entitled to summary judgment for the same reason that the trial court granted summary judgment to FNIC: the alleged claims were barred under the "expected or intended" exclusions in their respective policies.

¶ 25    Pennsylvania General's motion, which was directed at the John Doe parents' complaint,[5] also alleged that their complaint did not allege acts arising from professional pastoral counseling, and thus were not actually or potentially covered under the pastoral counseling professional liability coverage in Pennsylvania General's policies. The motion included the affidavit of Tom Conlon, a representative of Pennsylvania General. Conlon's affidavit stated that Pennsylvania General "has provided the portions of the policies issued to [the Jesuits] that it currently has available to [them]." The affidavit also stated that Pennsylvania General did not "currently have access to the remaining portions of the policies issued to [the Jesuits]." The Jesuits responded by arguing that summary judgment was inappropriate because Pennsylvania General did not produce the actual policies, and since Pennsylvania General was the plaintiff and the movant, it had the burden of proof regarding the policy provisions.

¶ 26    In February 2011, FNIC filed a motion for summary judgment with respect to the John Doe parents' complaint. FNIC argued that it owed no coverage or duty to defend because John Doe 117's injuries took place prior to the effective date of the policies, and therefore owed no coverage regarding the claim brought by the parents of John Doe 117. FNIC also invoked the policies' exclusions for "expected or intended" injuries, professional services, as well as Condition 1.a. On June 21, 2011, the trial court granted FNIC's motion, agreeing that the allegation in the John Doe parents' complaint that was predicated upon the injuries to John Doe 117 was barred because those injuries took place prior to the policy's effective date. The trial court also agreed that the expected or intended injury exclusion applied because the allegations in the John Doe parents' complaint indicated that the Jesuits had actual knowledge that McGuire had sexually abused minors prior to the alleged sexual abuse of John Does 117 and 118.

¶ 27    On July 13, 2011, the trial court granted the summary judgment motions of Empire, Pennsylvania General, RLI, and Mt. Hawley. As to Empire, RLI, and Mt. Hawley, the trial court found that, as it found with respect to the FNIC dispute, the "expected or intended" exclusion applied because the complaints alleged that the Jesuits had known of McGuire's prior sexual abuse of minors beginning in 1969 and had received reports of other incidents and, therefore, "should have anticipated or 'expected' that McGuire would sexually abuse or molest children." In addition, the trial court agreed that the claims did not allege an injury caused by an occurrence, which the policies defined in part as an "accident." The trial court

---

[5]In a separate appeal, we reversed the trial court's granting of summary judgment in favor of Pennsylvania General with respect to certain of the John Doe complaints. *Pennsylvania General Insurance Co. v. Chicago Province of the Society of Jesus*, 2012 IL App (1st) 103828-U (*Pennsylvania General I*). *Pennsylvania General I* is discussed later herein in greater detail. See *infra* ¶ 58 *et seq.*

noted that, since the complaints alleged that the abuse of the minors was expected or intended and not accidental, the injuries did not arise from an insurable occurrence.

¶ 28    With respect to Pennsylvania General's summary judgment motion against the John Doe parents' complaint, the trial court also found that Pennsylvania General's "expected or intended" exclusion applied for the same reasons it noted in its ruling on Empire's motion and the combined RLI/Mt. Hawley motion. The trial court further ruled that Pennsylvania General's "Pastoral Counseling Professional Liability" coverage did not apply because the alleged injuries in the John Doe parents' complaint did not arise from McGuire's role as a spiritual advisor; rather, according to the trial court, they arose "from McGuire's alleged sexual abuse of John Doe 117 and John Doe 118." In so doing, the trial court relied on excerpts from the missing policies and did not address the Jesuits' argument regarding Pennsylvania General's failure to attach the actual, complete policy to either its complaint for declaratory judgment or its summary judgment motion.

¶ 29    This timely appeal follows.

¶ 30                                   ANALYSIS

¶ 31    On appeal, the Jesuits contend that the circuit court erred in granting summary judgment to the Insurers on the issue of their duty to defend. Specifically, the Jesuits argue that the trial court erred in finding that: (i) the "expected or intended injury" exclusion in the Insurers' policies applied; (ii) the claims of John Doe 117 and his parents occurred before the FNIC policies incepted; (iii) the FNIC policies' "Condition 1.A" exclusion, regarding actual knowledge, applied; (iv) Pennsylvania General owed no coverage, where Pennsylvania General failed to produce copies of its policies; and (v) the allegations in the underlying claims did not potentially assert damages resulting from pastoral counseling activities.

¶ 32    Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). Summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied." *Id.* We review a trial court's entry of summary judgment *de novo*. *Id.*

¶ 33    In construing an insurance policy, the court determines the intent of the parties to the contract by construing the policy as a whole, with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract. *Id.* at 108. Where the words in the policy are clear and unambiguous, "a court must afford them their *plain, ordinary, and popular meaning*." (Emphasis in original.) *Id*. However, if the words in the policy are susceptible to more than one reasonable interpretation, they will be considered ambiguous and will be strictly construed in favor of the insured and against the insurer that drafted the policy. *Id*. Nonetheless, courts will not strain to find an ambiguity where none exists. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). "The construction of an insurance policy and a determination of the rights and obligations

-8-

thereunder are questions of law ***." *Konami (America), Inc. v. Hartford Insurance Co. of Illinois*, 326 Ill. App. 3d 874, 877 (2002).

¶ 34    While an insurer's duty to indemnify arises only if the facts alleged actually fall within coverage, the duty to defend is much broader. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993). "To determine whether the insurer has a duty to defend the insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy." *Outboard Marine Corp.*, 154 Ill. 2d at 107-08. If the underlying complaint alleges facts that fall "within or *potentially* within" the coverage of the policy, the insurer is obligated to defend its insured even if the allegations are "groundless, false, or fraudulent." (Emphasis in original.) *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). "An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (Emphasis in original.) *Id*. "Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy." *Id*. The threshold requirement that the complaint must satisfy to present a claim of potential coverage is minimal; the complaint need present only a possibility, not a probability, of recovery. *Bituminous Casualty Corp. v. Gust K. Newberg Construction Co.*, 218 Ill. App. 3d 956, 960 (1991).

¶ 35    In determining whether the allegations in the underlying complaint meet that threshold requirement, both the underlying complaint and the insurance policy must be liberally construed in favor of the insured. *Wilkin Insulation Co.*, 144 Ill. 2d at 73. "[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy." *International Insurance Co. v. Rollprint Packaging Products, Inc.*, 312 Ill. App. 3d 998, 1007 (2000). In addition, the plaintiff in a declaratory judgment action bears the burden of proof. *Farmers Automobile Insurance Ass'n v. Gitelson*, 344 Ill. App. 3d 888, 896 (2003). Finally, all doubts are resolved in the insured's favor. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 154 (1999) (citing *Wilkin Insulation Co.*, 144 Ill. 2d at 74). With these principles in mind, we turn to the questions presented here.

¶ 36                    The "Expected or Intended" Exclusion

¶ 37    The Jesuits first contend that the trial court erred in finding that the "expected or intended" exclusion applied. First, the Jesuits argue that the allegations of negligence were at least potentially covered under the Insurers' policies. Their second argument is that the trial court's finding improperly determined an ultimate factual issue in the underlying litigation. Since the underlying claims have been settled or otherwise dismissed, we elect to address the Jesuits' first argument.

¶ 38    As to their first argument, the Jesuits contend that the complaints in the underlying litigation were "littered" with allegations that the Jesuits either should have known, should have been aware, or had constructive notice of McGuire's prior sexual abuse of minors. The

Jesuits then conclude that, since those allegations did not rise to the level of actual knowledge, the "expected or intended" exclusion could not apply. In addition, they claim that, in finding the "expected or intended" exclusion barred the claim, the trial court misread *Wilson* when it erroneously considered the allegations outside of those within the specific negligence count. We disagree.

¶ 39 At the outset, we note that the complaints do, in fact, include allegations that the Jesuits either should have known, should have been aware, or had constructive notice of McGuire's prior sexual abuse of minors. In addition, when an insurer seeks to avoid coverage under a policy exclusion, "the applicability of the exclusionary clause must be clear and free from doubt." *Bituminous Casualty Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 564 (1991). In other words, we must construe any limitations on an insurer's liability liberally in favor of the insured and against the insurer. *Pekin Insurance Co. v. Estate of Goben*, 303 Ill. App. 3d 639, 642 (1999). As noted above, all doubts are resolved in the insured's favor. *Ehlco Liquidating Trust*, 186 Ill. 2d at 154 (citing *Wilkin Insulation Co.*, 144 Ill. 2d at 74). It is well established, however, that the terms "intended" and "expected," as used in similar insurance policy exclusionary clauses, are not synonyms: an "expected" injury is merely one that should have been "reasonably anticipated" by the insured. *Bay State Insurance Co. v. Wilson*, 96 Ill. 2d 487, 494 (1983).

¶ 40 Here, the factual section preceding the various counts of both the John Doe and the John Doe parents' complaints allege that the Jesuits were first apprised of McGuire's abuse of minors in 1969 and had subsequently received numerous other complaints alleging McGuire's sexual abuse of minors, all of which took place prior to the respective times of the John Does' abuse. These allegations set forth that the Jesuits reasonably should have anticipated (or expected) McGuire's abuse of the underlying John Doe plaintiffs after the Jesuits received Fr. Schlax's report of John Doe 84's abuse in 1969 as well as numerous subsequent reports *prior* to the abuse of the underlying plaintiffs. Since these allegations were an expected injury from the Jesuits' standpoint, the exclusion for "expected or intended" injuries barred coverage under the various policies.

¶ 41 Moreover, when determining whether an insurance company has a duty to defend, a trial court need not "consider each count in isolation and ignore facts pled in other counts," where the plaintiff has pleaded separate counts against various defendants but did not plead those counts in the alternative. *Illinois Casualty Co. v. Turpen*, 84 Ill. App. 3d 288, 293 (1980). Here, neither the John Doe complaints nor the John Doe parents' complaint alleged mere negligence or *respondeat superior* as an alternative theory of relief. Prior knowledge of McGuire's predilections is the cornerstone of each John Doe claim against the Jesuits. We simply cannot parse the allegations into smaller parts in order to fashion some insurable cause of action that does not trigger the "expected or intended" exclusion. Consequently, the trial court did not err in refusing to consider those counts in isolation from the facts alleging the Jesuits' prior knowledge of McGuire's numerous incidents of sexual abuse of minors (and before the alleged abuse of the John Doe plaintiffs). Related to this point, the Jesuits argue that the trial court misread the supreme court's holding in *Wilson* when it considered the factual allegations of McGuire's prior abuse in finding that the negligence counts were barred. This argument, however, is without merit.

¶ 42    In *Wilson*, the supreme court held that a trial court could, under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend. *Wilson*, 237 Ill. 2d at 459. Here, the trial court did not look *beyond* the underlying complaint in order to determine the Insurers' duty to defend, which the *Wilson* court held to be appropriate "under certain circumstances." *Id.* Rather, the trial court looked at the *entire* underlying complaint, which included factual allegations of McGuire's sexual abuse other minors prior to the abuse of the underlying John Doe complainants. The trial court thus did not misread *Wilson*.

¶ 43    This court has previously found the underlying actions of an insured to be clearly intentional, notwithstanding the injured parties' claims of negligence. See, *e.g.*, *Westfield National Insurance Co. v. Continental Community Bank & Trust Co.*, 346 Ill. App. 3d 113 (2003). The Jesuits argue that the trial court erred in relying upon *Westfield* because, unlike the insured spouse (the aunt) there, the Jesuits here are not "accused of engaging in any 'participatory conduct' relative to" the claims of the underlying plaintiffs. We reject this argument.

¶ 44    The holding in *Westfield* was predicated upon the insured party's failure to act, rather than her participatory conduct. Notably, the *Westfield* court made the following observations:

> "*The aunt did nothing* when [her husband] left the marital bedroom to visit the minors in their bedrooms. Even when one of the minors locked herself in the bathroom crying, *the aunt did nothing. The allegations reflect the aunt's awareness* of her husband's prior criminal involvement with minors in Florida and of her husband's inappropriate physical encounters with the minors; *however, despite this awareness, the aunt did nothing* to advise or report these circumstances to the minors' parents." (Emphases added.) *Westfield*, 346 Ill. App. 3d at 122.

¶ 45    Immediately after making those observations, the court held that the insured party "reasonably should have anticipated or 'expected' the injuries, which were a natural and probable result of her enabling acts, regardless of whether she could anticipate the precise injury the minors would actually suffer." *Westfield*, 346 Ill. App. 3d at 122.

¶ 46    Here, the complaint alleges that the Jesuits (the insured party) were aware of McGuire's abuse of minors on multiple prior occasions and reasonably should have anticipated or expected the injuries that McGuire would subsequently inflict on the John Doe plaintiffs. As such, the expected or intended exclusion also applies here, and summary judgment in favor of the Insurers was warranted.

¶ 47    Nonetheless, the Jesuits contend that the "expected or intended" exclusion should not apply because to do so would allow the allegations of intentional conduct to "override, negate or obliterate allegations of negligent conduct." In support of this contention, the Jesuits cite *Roman Catholic Diocese of Dallas v. Interstate Fire & Casualty Co.*, 133 S.W.3d 887 (Tex. Ct. App. 2004), and *Roman Catholic Diocese of Joliet, Inc. v. Lee*, 292 Ill. App. 3d 447 (1997). The Jesuits' reliance upon *Diocese of Dallas* and *Diocese of Joliet*, however, is misplaced.

¶ 48    At the outset, *Diocese of Dallas* was not a duty to defend case; rather, it concerned the duty to indemnify, which involves a different analysis. *Diocese of Dallas*, 133 S.W.3d at 890

(observing that the policies at issue did not provide a duty to defend). In addition, *Diocese of Dallas* was decided by the Texas court of appeals, and there was no discussion therein to demonstrate that Texas law tracks the Illinois Supreme Court's subsequent holding in *Wilson*, *i.e.*, that a trial court may under certain circumstances look at all of the underlying pleadings to determine an insurer's duty to defend. In any event, it is well established that case law from other states is not binding upon this court. *American Freedom Insurance Co. v. Uriostegui*, 366 Ill. App. 3d 1000, 1004 (2006). Finally, *Diocese of Dallas* is factually distinguishable: the court in that case noted that there were alternate bases for the negligence claim other than the insured's prior actual knowledge. *Diocese of Dallas*, 133 S.W.3d at 895. Here, the negligence count was itself wholly grounded upon the Jesuits' prior knowledge. The negligence counts of the John Doe complaints mirror each other in that they claim that the Jesuits should have known of McGuire's "propensities as a child sexual abuser" based upon "numerous complaints or reports to the Jesuits since 1961 that McGuire had engaged in inappropriate conduct with minors."[6] Therefore, *Diocese of Dallas* is unpersuasive.

¶ 49    With respect to *Diocese of Joliet*, we note that the issue on appeal also was not the insurer's duty to defend. *Diocese of Joliet*, 292 Ill. App. 3d at 449. In addition, that court did not address whether an exclusion for expected or intended acts applied; instead, the issue presented was how many insurable occurrences took place. *Id.* Finally, there was only one underlying plaintiff in *Diocese of Joliet* and, unlike this case, there were no claims that the diocese had been aware of other victims of the abusive priest before the underlying plaintiff's abuse. Thus, there were no allegations of a prior awareness on the part of the insured that would raise the issue of whether the diocese reasonably should have anticipated the underlying plaintiff's injuries. Since *Diocese of Joliet* is factually distinguishable, the Jesuits' reliance upon it is misplaced, as well.

¶ 50                    John Doe 117's and His Parents' Injuries

¶ 51    Next, the Jesuits claim that the trial court erred in finding that FNIC's policies did not cover the claims of John Doe 117 and his parents because he and his parents sufficiently alleged injuries that occurred during the policy term. The Jesuits posit that the policies unambiguously provide that any injury occurring during the policy term (including lingering emotional or psychological injuries) is covered regardless of when the harm giving rise to the injury occurs. They conclude that the trial court erred in finding that damages resulting from John Doe 117's and his parent's emotional and psychological injuries occurring during the policy term were not covered, because the sexual abuse of John Doe 117 (between 1988 and 1989, and in 1992 and 1994) occurred before the term of the FNIC policies (November 30, 1998, to November 30, 2004).

¶ 52    The parties agree that, where the policy language is unambiguous, it must be applied as written. *Hobbs*, 214 Ill. 2d at 17. This court also may not strain to find ambiguity where none exists. *Id.* In this case, the policy defined "sexual abuse or sexual molestation" in pertinent

---

[6]The complaints of John Does 129 and 130 are substantially the same as the other John Doe complainants: they alleged that the reports took place "in the 1960s and thereafter."

part as: "the infliction of harm of a sexual nature upon a person by any employee, agent or representative of [the Jesuits], whether such harm is physical, emotional or psychological." We cannot agree with the Jesuits' interpretation that the manifestation of emotional or psychological injury during a policy period would under all circumstances relate back to the infliction of the sexual abuse causing that injury, even if, as here, the sexual abuse took place well before the beginning of the policy period. The precise act giving rise to coverage is the infliction of some type of harmful or inappropriate sexual contact, not the subsequent emotional or psychological ill effects from that contact, even if those ill effects persist long after the sexual contact occurred. To hold as the Jesuits contend would improperly transform this occurrence-based policy into a claims-based policy. See *Stark v. Illinois Emcasco Insurance Co.*, 373 Ill. App. 3d 804, 811 (2007). We therefore agree with the trial court that John Doe 117's claims and those of his parents are not covered by the FNIC policy.

¶ 53        The Actual Knowledge Component of "Condition 1.a"

¶ 54        The Jesuits also claim that the trial court erred in finding that FNIC's coverage was avoided because of "Condition 1.a," which cancelled any subsequent sexual abuse coverage if any "executive officer, supervisory employee, director or trustee" of the Jesuits had "actual knowledge of any act, incident or alleged act of sexual abuse or sexual molestation" committed by any "employee, agent, representative or volunteer worker." Similar to their contention centered on the "expected or intended" exclusion discussed above, the Jesuits argue that the complaints in the underlying litigation are "littered" with allegations that the Jesuits merely "should have known" of McGuire's abusive proclivities. The Jesuits further assert that, even assuming actual knowledge of McGuire's tendencies, the underlying complaints do not identify which executive officer, supervisory employee, director or trustee of the Jesuits had this knowledge.

¶ 55        As discussed above, we construe an insurance policy as a whole, keeping in mind the risk undertaken, the subject matter to be insured, and the purposes of the entire contract. *Outboard Marine Corp.*, 154 Ill. 2d at 108. Where the words in the policy are clear and unambiguous, "a court must afford them their *plain, ordinary, and popular meaning*." (Emphasis in original.) *Id.* In addition, we may not strain to find an ambiguity where none exists. *Hobbs*, 214 Ill. 2d at 17.

¶ 56        Here, Condition 1.a cancelled any subsequent sexual abuse coverage if a "supervisory employee" of the Jesuits had "actual knowledge of any *** alleged act of sexual abuse or sexual molestation" committed by any "employee, agent, representative or volunteer worker." Furthermore, it is undisputed that McGuire, a teacher and scholastic advisor at Loyola Academy, was an employee of the Jesuits. The underlying complaints plainly alleged that the Jesuits were first apprised of McGuire's abuse of minors in 1969, when John Doe 84 reported to Fr. Schlax, a Chicago Archdiocese priest, that McGuire had sexually abused him. The underlying complaints also alleged that Fr. Schlax reported that abuse to the Jesuits and officials at Loyola Academy. In addition, the complaints of John Does 116, 117 and 118, as well as John Doe 119 alleged that, after reporting his abuse, John Doe 84, his parents, and Fr. Schlax met with representatives of the Jesuits and Loyola Academy, including the

president, the headmaster, and the principal of the academy. In other words, the complaints alleged that supervisory employees (the president, principal, and the headmaster of the academy) had actual knowledge of an alleged act of sexual abuse (inflicted upon John Doe 84) by an employee, agent, representative or volunteer worker (McGuire). In light of these allegations, the trial court properly found that Condition 1.a barred any coverage for the underlying complaints.

¶ 57    The Jesuits dispute this, however, contending that only higher-ranking members of the Jesuit organization were supervisory employees and that the exclusion was not triggered unless some yet even higher, but unspecified, Jesuit authority was notified of McGuire's activities. Taking into account the customary institutional structure of American high schools, we find this argument to be utterly implausible. While the insurance contract does not define "supervisory employee," and it includes that term with such titles as "executive officer," "director," and "trustee," we find that a plain reading of the term "supervisory employee" clearly includes the president, principal, and headmaster of Loyola Academy (the Jesuit high school where McGuire was employed as a teacher and spiritual advisor). The trial court therefore correctly granted summary judgment in favor of the Insurers on this basis, as well.

¶ 58                            Pennsylvania General's Coverage

¶ 59    The Jesuits' final contention is that the trial court erred in finding that Pennsylvania General owed no coverage. Specifically, they first argue that Pennsylvania General's failure to produce its policies created a question of material fact as to the content of those policies, precluding summary judgment. Their second point is that the allegations in the John Doe parents' complaint either sufficiently alleged damages arising out of pastoral counseling activities or raised a question of material fact as to what constitutes pastoral counseling activities, also precluding summary judgment.

¶ 60    In *Pennsylvania General I*, this court considered Pennsylvania General's coverage obligations of the John Doe complaints. There, the Jesuits appealed the trial court's decision granting Pennsylvania General's motion for summary judgment with respect to John Does 117, 118, 129, and 130. *Pennsylvania General I*, 2012 IL App (1st) 103828-U, ¶ 2. The Jesuits contended that: (i) a question of fact existed regarding what the insurance polices actually provided; (ii) the "expected or intended injury" exclusion did not foreclose coverage for bodily injury and, in deciding that the exclusion did apply, the court improperly ruled on an ultimate factual question in the underlying actions; and (iii) the pastoral counseling professional liability coverage endorsement in the policies covered the claims. *Id.*

¶ 61    With respect to their first point, the Jesuits argued that questions of material fact existed regarding the content of Pennsylvania General's policies because Pennsylvania General, in support of its claims that it had no duty to defend or indemnify the Jesuits and in its subsequent motion for summary judgment addressed to those claims, relied on generic, preprinted policy forms as opposed to actual, complete copies of its insurance agreements with the Society. *Id.* ¶ 20. For reasons that remain unknown, Pennsylvania General has not yet found a full copy of its own actual policy insuring the Jesuits. We noted that

Pennsylvania General initially attached to its fourth amended complaint all forms and documents Pennsylvania General allegedly had relating to the policies, as well as a sworn affidavit from one of its "representative[s]" stating that Pennsylvania General had provided the available portions of the Jesuits' policies, but it did not have access to the remaining portions of the Jesuits' policies. *Id.* Pennsylvania General then filed a motion for summary judgment and a supporting memorandum attaching the same forms, as well as a sworn affidavit from a senior underwriter and assistant vice president for its parent company stating that the policy provisions attached to the motion for summary judgment were the "operative parts" of the Jesuits' policies. *Id.* ¶ 21. In response, Pennsylvania General argued: (i) section 2-606 of the Illinois Code of Civil Procedure (735 ILCS 5/2-606 (West 2010)) only required it to attach the relevant portions of the policies and not complete copies of them; and (ii) it was up to the Jesuits to either produce any additional provisions they believed were relevant, counter their senior underwriter's affidavit, or request additional discovery. *Pennsylvania General I*, 2012 IL App (1st) 103828-U, ¶¶ 30, 32.

¶ 62        We rejected Pennsylvania General's arguments. As to its first argument, we held that section 2-606, which concerns claims or defenses, was inapplicable because Pennsylvania General had filed a motion for summary judgment. *Id.* ¶ 30. As to its second argument, we observed that, in order to interpret the coverage provisions of an insurance policy that are relevant to the allegations of an underlying complaint, a court must construe those provisions "in the context of the insurance policy as a whole." *Id.* ¶ 31 (citing *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391). We further noted that Pennsylvania General, as the plaintiff, had the burden to provide as much of the written document as necessary to the determination at hand, which meant the entire policies, not just portions thereof, but that it failed to explain: (i) why the policies were unavailable, (ii) its diligence in looking for them, (iii) why it believed the provisions it attached to its summary judgment motion were the operative parts, or (iv) whether those operative parts were copies of actual policy provisions. *Id.* ¶¶ 32-33. As a result, absent proof by Pennsylvania General that the attached documents were the best evidence of the Jesuits' policies, the documents were insufficient and Pennsylvania General had failed to meet its burden. *Id.* ¶ 33 (citing *Zurich Insurance Co. v. Raymark Industries, Inc.*, 145 Ill. App. 3d 175 (1986)). We thus reversed the judgment of the trial court on this issue and remanded for further proceedings. *Id.* ¶ 30. Pennsylvania General did not petition the supreme court for leave to appeal our decision.

¶ 63        In this appeal, Pennsylvania General, however, argues that our prior decision was clearly erroneous. As in the prior appeal, Pennsylvania General claims that it was not obligated under section 2-606 of the Code of Civil Procedure (735 ILCS 5/2-606 (West 2010)) to produce the complete policy, and that the Jesuits had the burden to produce some evidence to support its position that additional policy terms were implicated. These arguments, however, were presented and rejected in *Pennsylvania General I*, and this court remanded the matter for further proceedings. Pennsylvania General has presented no argument to convince us that the holding in *Pennsylvania General I* was erroneous or should otherwise be reconsidered. Accordingly, we must reverse the trial court's granting of summary judgment in favor of Pennsylvania General, and remand this cause for further proceedings.

¶ 64        Finally, because of our holding on this issue, we need not determine whether

-15-

Pennsylvania General's "expected or intended" exclusion applied or whether the John Doe parents' complaint sufficiently alleged a claim under the provision providing coverage for "Pastoral Counseling Professional Liability." These are matters that shall be determined by the trial court upon remand.

¶ 65                                          CONCLUSION

¶ 66      For these reasons, the trial court correctly granted summary judgment in favor of Empire, FNIC, RLI, and Mt. Hawley, because the underlying complaint: (i) alleged facts that triggered either the "expected or intended" or the "Condition 1.a" exclusion; or (ii) alleged injuries that took place outside of the policies' effective dates. The trial court did, however, err in granting Pennsylvania General's motion for summary judgment, because Pennsylvania General failed to provide complete copies of its insurance policies. Accordingly, the judgment of the trial court granting summary judgment in favor of Pennsylvania General is reversed, and the cause is remanded for further proceedings.

¶ 67      Affirmed in part and reversed in part; cause remanded for further proceedings.