WESTFIELD NATIONAL INSURANCE COMPANY, Plaintiff-Appellee, v. CONTINENTAL COMMUNITY BANK AND TRUST COMPANY, as Next Friend and Guardian of the Estates of J.S. *et al.*, Defendant-Appellant (Jill Wood Valdez, Defendant).

Second District No. 2—01—1369

Opinion filed December 23, 2003.—Rehearing denied March 3, 2004.

Junie L. Sinson, of Sinson & Sinson, Ltd., of Chicago, for appellant.

Richard T. Valentino and Lynn Urkov Thorpe, both of Mora, Baugh, Waitzman & Unger, L.L.C., of Chicago, for appellee.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

In 2001 plaintiff, Westfield National Insurance Company (Westfield), brought a declaratory judgment action seeking a judicial determination that it was not obligated to defend or indemnify its insured, Jill Wood Valdez (the aunt), in a civil suit filed against her by

defendant, Continental Community Bank and Trust Company, as next friend and guardian of the estates of J.S. and S.S., minors (collectively, the minors) (No. 00—LK—625). The underlying civil suit, filed in December 2000, arose from allegations that, between early 1995 and continuing to November 1996, the aunt's husband, Librado Valdez, sexually molested the minors during their visits to the Valdez home. Valdez later pleaded guilty and was criminally convicted for these incidents (No. 96—CF—2395). The minors appeal the trial court's order granting summary judgment in favor of Westfield. The aunt has not appealed the trial court's ruling and is not a party to this appeal. We affirm.

In the underlying civil suit, the minors alleged that their aunt owed "a duty to protect each child from harm and danger which she knew or should have known existed." The minors further alleged that, notwithstanding that duty, the aunt "was guilty of the following wrongful acts of commission or omission":

"(a) Report to the parents of [the minors] the sexual molesting of [the minors] which she knew or should have known because of the conduct of her husband ***[;]

(b) Advised the parents of [the minors] of the prior criminal involvement with minors involving *** Valdez in the State of Florida;

(c) Report to the parents of [the minors] inappropriate physical encounters which were occurring involving [the minors] and *** Valdez;

(d) Desist from bringing [the minors] to sit on the lap of *** Valdez;

(e) Desist from creating a sexually charged atmosphere by promoting a collective viewing of movies which involved naked actors and actresses;

(f) Desist during said movie viewings the encouragement of comments involving the naked bodies of actresses applicable to the pubescent and pre-pubescent [minors];

(g) Ascertain the activities of *** Valdez at such times as he would leave the marital bedroom and visit the bed of [the minors];

(h) Desist from directing *** [the minors] to sit on the lap of the partially clad *** Valdez for the purposes of keeping him warm;

(i) Investigate reason why she discovered [one of the minors] locked in the bathroom and crying after an encounter with *** Valdez;

(j) Desist from providing and encouraging [the minors] from wearing minimal and provocative clothing when interacting with *** Valdez; [and]

(k) Desist from the isolating of [the minors] from each other so as to secure a one-on-one intimacy with *** Valdez."

The underlying complaint further alleged:

"As a direct and proximate result of one or more of the aforesaid enabling acts or omissions, *** [the minors] were exposed to and submitted to *** Valdez, at which time, each of them was molested and suffered injuries of a personal and pecuniary nature."

Count II contained the same allegations but claimed that the aunt's conduct violated sections 2—3(1)(b) and (2)(iii) of the Juvenile Court Act of 1987 (705 ILCS 405/2—3(1)(b), (2)(iii) (West 2000)).

The aunt tendered her defense to Westfield under her homeowner's policies in effect at the relevant times. In response, Westfield filed this declaratory judgment action claiming that it owed no duty to defend or indemnify the aunt because, *inter alia*, the underlying complaint alleged deliberate or intentional conduct on the part of the aunt, which enabled Valdez to molest the minors, and was therefore barred under the "expected or intended" exclusion of the Westfield policies. At the hearing on Westfield's motion for summary judgment, the minors sought leave to depose the aunt; the trial court denied the motion. Following a hearing, the trial court granted summary judgment in favor of Westfield, ruling that Westfield had no duty to defend or indemnify the aunt. The minors timely appeal.

■ The minors contend that the trial court erred when it granted summary judgment in favor of Westfield and argue that the applicable provisions of insurance did not preclude coverage to the aunt. The construction of an insurance policy and a determination of the rights and obligations arising under the policy are questions of law for the court, and summary judgment is an appropriate proceeding for resolving these questions. *Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill. 2d 384, 391 (1993). A trial court will enter summary judgment if the pleadings, depositions, admissions, and affidavits show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 291 (2000). We apply a *de novo* standard of review to the trial court's decision to grant summary judgment. *Jones*, 191 Ill. 2d at 291.

■ Whether an insurer has a duty to defend its insured depends on whether the underlying complaint alleges facts within or potentially within coverage of the insurance policy. *National Union Fire Insurance Co. of Pittsburgh v. R. Olson Construction Contractors, Inc.*, 329 Ill. App. 3d 228, 234 (2002). Where the underlying complaint alleges facts which, if true, would exempt the insured from coverage under the policy, the insurer has no duty to defend. *American Family Mutual Insurance Co. v. Chiczewski*, 298 Ill. App. 3d 1092, 1094 (1998), citing *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336

(1993). In construing the insurance policy, we must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured, and the purposes of the entire contract. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391. If the words in the policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391.

Each policy in force during the relevant time period provided the following coverage:

> "COVERAGE E—Personal Liability If a claim is made or a suit is brought against an Insured for damages because of bodily injury, caused by an *occurrence* to which this coverage applies, we will:
>
> 1. pay up to our limit of liability for the damages for which the Insured is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent." (Emphasis added.)

Each policy also excluded from coverage bodily injury or property damage "which is expected or intended by the Insured." The policies also stated that personal injury insurance did not apply to "injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an insured."

Each policy defined "occurrence" as follows:

> "9. 'occurrence' means an *accident*, including continuous or repeated exposure to substantially the same harmful conditions, which results, during the period, in:
>
> a. bodily injury; or
>
> b. property damage." (Emphasis added.)

The policies define the term "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom." With respect to the term "Insured," the policies stated that it "means, unless otherwise defined, you and any 'family member.' " The policies define occurrence as an "accident." Although the use of the word "occurrence" in insurance policies broadens coverage and eliminates the need to find an exact cause of damages, as long as they are neither intended nor expected by the insured, the "occurrence" must still be "accidental." *State Farm Fire & Casualty Co. v. Tillerson*, 334 Ill. App. 3d 404, 408 (2002). Illinois courts have defined "accident" as an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate character. *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill. App. 3d 617, 619 (1980). The natural and ordinary consequences of an act do not constitute an accident. See *Atlantic Mutual Insurance Co. v.*

*American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 561 (2000). Therefore, under the terms of the policies, if the aunt "expected or intended" to cause bodily injury to the minors, her actions are not an "accident" and are not covered under the "occurrence" provision, which triggers coverage. See *State Farm Fire & Casualty Co. v. Watters*, 268 Ill. App. 3d 501, 506 (1994). Moreover, if the aunt "expected or intended" to cause bodily injury to the minors, her actions are not covered and are excluded under the "intended-acts" provision. See *Watters*, 268 Ill. App. 3d at 506.

■ As an initial matter, we believe it would be helpful to summarize our state's case law pertaining to homeowner's insurance coverage for sexual abuse. Reviewing courts have previously considered whether the sexual molestation of minor children by an insured fell within an exclusionary clause of a homeowner's policy and ruled that, when the injuries were expected or intended by the insured, coverage was excluded. See *Scudder v. Hanover Insurance Co.*, 201 Ill. App. 3d 921 (1990). In *Scudder*, this court affirmed a summary judgment ruling in favor of the insurer, where the insured had allegedly sexually abused four minor boys. We concluded that the insured's intent to cause injury could be inferred as a matter of law because of "the inevitability of injury in sexual abuse cases, especially when the victims are minors." *Scudder*, 201 Ill. App. 3d at 928.

Since *Scudder* was decided, Illinois courts have adopted an "inferred-intent" rule in sexual abuse cases where the victims are minors. *Watters*, 268 Ill. App. 3d at 507; see also *Hartford Insurance Co. of Illinois v. Kelly*, 309 Ill. App. 3d 800, 804-07 (1999). Under this rule, if a person sexually abuses a minor, the court will find as a matter of law that the abuser intended to injure his or her victims. *Watters*, 268 Ill. App. 3d at 507.

In *Watters*, the defendant sexually molested three minor children; the defendant was mildly retarded. The parents filed suit against the defendant and his mother, alleging that the defendant's conduct injured the children and the mother was negligent in allowing the sexual molestations to occur in her home. In an amended complaint, the parents also sought damages for the negligent infliction of emotional distress upon the children, which resulted from the defendant's sexual molestation. *Watters*, 268 Ill. App. 3d at 502. The defendant tendered his defense to State Farm, and State Farm sought a declaratory judgment with respect to the policy. The trial court determined that the homeowner's policy provided coverage for the defendant's actions and that State Farm was required to defend and indemnify the defendant in the civil suit. *Watters*, 268 Ill. App. 3d at 505.

On appeal, State Farm argued that its policy did not provide coverage because the defendant's sexual misconduct was intentional and not an "accident." In determining whether the "occurrences" were "accidents" triggering coverage or whether the policy's exclusion provision applied, the reviewing court considered whether the injury was expected or intended from the standpoint of the insured. *Watters*, 268 Ill. App. 3d at 506. The reviewing court found the *Scudder* court's reasoning persuasive and reversed, holding that, despite the defendant's diminished mental capacity, his specific intent to injure would be inferred as a matter of law, precluding coverage under the homeowner's policy. *Watters*, 268 Ill. App. 3d at 507. The reviewing court also considered and rejected the argument that the cause of action for negligent infliction of emotional distress should be covered under the policy, finding that the allegations of negligence were "a transparent attempt to trigger insurance coverage." *Watters*, 268 Ill. App. 3d at 510.

In *Western States Insurance Co. v. Bobo*, 268 Ill. App. 3d 513, 519-20 (1994), the reviewing court explained the public policy rationale underlying the inferred-intent rule in that, although some innocent victims may go uncompensated, the " 'benefit [of compensating sexual abuse victims with insurance proceeds] is outweighed by the effect of allowing sexual offenders to escape having to compensate minors for the harm' " they caused. *Bobo*, 268 Ill. App. 3d at 521, quoting *Whitt v. De Leu*, 707 F. Supp. 1011, 1016 (W.D. Wis. 1989). In *Kelly*, 309 Ill. App. 3d 800, the First District considered whether intent could be inferred as a matter of law to exclude coverage when the allegations of sexual conduct with a minor were phrased in terms of negligence. In determining that inferred-intent applied to free the insurance company from its duty to defend, the reviewing court stated that "the parties did not intend to include in the definition of 'occurrence' inappropriate sexual misconduct of a minor." *Kelly*, 309 Ill. App. 3d at 806. The court also reasoned that a homeowner would not believe that he was paying for such coverage and would not want to share that type of risk with other policyholders. *Kelly*, 309 Ill. App. 3d at 807.

The general rule flowing from the foregoing cases is that an insurance company is under no duty to defend or indemnify an insured who sexually abuses a minor, because the nature of the conduct itself conclusively establishes as a matter of law that the insured expected or intended to injure the victims. See *Kelly*, 309 Ill. App. 3d at 805-07; *Bobo*, 268 Ill. App. 3d at 521; *Watters*, 268 Ill. App. 3d at 507; but see *Country Mutual Insurance Co. v. Hagan*, 298 Ill. App. 3d 495, 504-06 (1998) (holding that an intent to injure is not inferred when the abuser is also a minor). Coverage is not triggered because an insured's sexual

abuse of a minor does not fall within the definition of "occurrence." See *Kelly*, 309 Ill. App. 3d at 806. Further, the "expected or intended acts" exclusion provision of an insurance policy applies to exclude coverage for an insured's sexual abuse of a minor. *Scudder*, 201 Ill. App. 3d at 928.

We recognize that, in the *Scudder*, *Watters*, *Bobo*, and *Kelly* cases, coverage was sought on behalf of the actual abuser whose victims were seeking relief in a civil forum. In the present case, however, the minors are seeking relief based on the aunt's conduct and not the acts of Valdez, the actual abuser. Therefore, the issue in the present case is whether a duty to defend or indemnify exists as to the spouse of a perpetrator who commits sexual abuse upon minors. In this case, for the reasons articulated below, we hold that the intentional-acts exclusion of the policies applies and precludes Westfield from owing a duty to defend or indemnify the aunt for the injuries she allegedly inflicted upon the minors.

Although no other Illinois court has addressed this particular issue, we note that several reviewing courts have considered whether one spouse-insured may have a right to recover under an insurance policy separate from that of the other spouse-insured who committed an intentional act, the first being *Economy Fire & Casualty Co. v. Warren*, 71 Ill. App. 3d 625 (1979). In *Warren*, after a couple's claim for fire damages had been paid by the insurer, the wife admitted setting the fire that caused the loss. The insurer sought restitution of the proceeds paid to the husband and wife. The husband denied any wrongdoing and sought to keep his share of the proceeds received under the insurance policy. The trial court found that the settlement and payment were procured by fraud. On appeal, after considering rulings from other states, the reviewing court declined to impute the intentional act of the wife to the husband. *Warren*, 71 Ill. App. 3d at 628-29. Instead, the reviewing court identified the husband as an "innocent" insured, and allowed the husband to recover one-half of the insurance proceeds. *Warren*, 71 Ill. App. 3d at 629. The reviewing court further explained that, had the insurer intended that the wrongdoing of one insured be imputed to another insured, it should have expressed those terms in the policy. *Warren*, 71 Ill. App. 3d at 629.

Since *Warren* was decided, other reviewing courts have similarly held that, absent an insurance provision to the contrary, the wrongdoing of one insured cannot be imputed to another insured. See, *e.g.*, *Fittje v. Calhoun County Mutual County Fire Insurance Co.*, 195 Ill. App. 3d 340 (1990); *State Farm Fire & Casualty Insurance Co. v. Miceli*, 164 Ill. App. 3d 874 (1987); *West Bend Mutual Insurance Co. v.*

*Salemi*, 158 Ill. App. 3d 241 (1987). In the present case, the minors filed suit against the aunt seeking damages based on the aunt's allegedly negligent conduct, which purportedly led to Valdez's molestation of the minors. The inferred-intent rule clearly precludes any duty to defend or indemnify Valdez, as his intent to cause bodily harm to the minors is inferred as a matter of law by his conduct. See *Kelly*, 309 Ill. App. 3d at 805-07; *Bobo*, 268 Ill. App. 3d at 520; *Watters*, 268 Ill. App. 3d at 507. Based upon the principles articulated in the *Warren* line of cases, we decline to impute the intent of Valdez to the aunt and will instead focus on the provisions of the policy and the allegations of the underlying complaint in determining whether the intentional-acts exclusion applies to preclude Westfield from having a duty to defend or indemnify the aunt. See *National Union Fire Insurance Co.*, 329 Ill. App. 3d at 234. In doing so, we reject the minors' argument that the trial court abused its discretion when it refused to allow them to depose the aunt before ruling on Westfield's motion for summary judgment. See *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 567 (2000) (stating that, where summary judgment is sought in the context of a declaratory judgment action to determine whether an insurer has a duty to defend, the use of extrinsic evidence is inappropriate); see also *Bituminous Casualty Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 562 (1991).

■ Liability insurance is intended to protect insureds from losses and to provide a source of funds to compensate victims. The liability portion of a typical homeowner's insurance policy generally provides liability coverage for many claims against insureds sounding in negligence but excludes coverage for claims of liability arising from intentional acts of insureds. See *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1084 (2000). Here, the intended-acts exclusion of the policy at issue excluded from coverage bodily injury or property damage "which is expected or intended by the Insured."

In construing a policy exclusion for bodily injury "which is expected or intended by the insured," courts have explained that coverage is precluded if the insured's acts were intentional and the insured had the specific intent to injure. See *Scudder*, 201 Ill. App. 3d at 927. Our supreme court stated that these clauses require a specific intent or expectation that the bodily injury will occur. *Bay State Insurance Co. v. Wilson*, 96 Ill. 2d 487, 492-94 (1983). Therefore, an intentional act causing an unexpected or unintended result may be covered. *Wilson*, 96 Ill. 2d at 493. However, the *Wilson* court further stated that whether an injury was "expected" is a subjective question, but it can be inferred from objective evidence that the injury was the natural and probable result of the act. *Wilson*, 96 Ill. 2d at 493-94.

The terms "intended" and "expected" are not synonymous, and a greater degree of proof is required to establish "intent" than to establish "expectation." *Wilson*, 96 Ill. 2d at 494, citing *Farmers Automobile Insurance Ass'n v. Medina*, 29 Ill. App. 3d 224, 228-29 (1975) (Moran, J., specially concurring). Injury is "expected" where the damages are not accomplished by design or plan, *i.e.*, not "intended," but are "of such a nature that they should have been reasonably anticipated (expected) by the insured." *Freyer*, 89 Ill. App. 3d at 620. Accordingly, injuries that should have been reasonably anticipated by the insured will be found to have been subjectively "expected" within the meaning of an insurance policy. *Wilson*, 96 Ill. 2d at 494, citing *Freyer*, 89 Ill. App. 3d at 620.

In the present case, the allegations of the underlying complaint, taken as true, reflect that the aunt invited and encouraged the minors to visit at her home while Valdez was present; directed the minors to sit on her husband's lap while he was "partially clad"; and promoted "a collective viewing of movies which involved naked actors and actresses." In addition to encouraging comments on "the naked bodies of actresses applicable to the pubescent and pre-pubescent Minors," the aunt also encouraged the minors to wear "minimal and provocative clothing when interacting with *** Valdez." The aunt did nothing when Valdez left the marital bedroom to visit the minors in their bedrooms. Even when one of the minors locked herself in the bathroom crying, the aunt did nothing. The allegations reflect the aunt's awareness of her husband's prior criminal involvement with minors in Florida and of her husband's inappropriate physical encounters with the minors; however, despite this awareness, the aunt did nothing to advise or report these circumstances to the minors' parents.

We believe that each of these allegations establishes that the aunt should have been cognizant of her own conduct toward the minors and *vis-a-vis* her husband, Valdez. We further believe that the aunt reasonably should have anticipated or "expected" the injuries, which were a natural and probable result of her enabling acts, regardless of whether she could anticipate the precise injury the minors would actually suffer. See *Wilson*, 96 Ill. 2d at 493-94. Despite the phraseology used in the underlying complaint, the minors have alleged intentional conduct on the part of the aunt, and the minors' cause of action based on negligence is "a transparent attempt to trigger insurance coverage." *Watters*, 268 Ill. App. 3d at 510. The allegations presented in the underlying complaint are entirely dissimilar to the circumstances presented in *Warren*, in which the reviewing court identified a right to recover applied to an "innocent" spouse. See *Warren*, 71 Ill. App. 3d at 629. Finding that the allegations in the present case established

that the aunt was an "innocent" spouse or interpreting the allegations as nothing more than mere negligence would require us to ignore the facts alleged.

We also find support for our conclusion that the instant complaint alleges conduct of an intentional nature from decisions of other jurisdictions addressing similar circumstances. A wife's indifference to her husband's criminal conduct may be characterized as an affirmative act. See *Pamela L. v. Farmer*, 112 Cal. App. 3d 220, 169 Cal. Rptr. 282 (1980); *Doe v. Franklin*, 930 S.W.2d 921 (Tex. Ct. App. 1996). In *Farmer*, the reviewing court found that the respondent wife was not merely negligent in failing to prevent harm to the minor plaintiffs from her husband but that the respondent by her own acts increased the risk of such harm occurring. According to the allegations, the respondent " 'encouraged and invited' " the children to play in her swimming pool, prepared refreshments to " 'entice' " the children, and " 'encouraged the parents ... to permit' " the children to come to her premises by telling them it would be perfectly safe for the children to swim when the respondent was not there, because her husband would be there. *Farmer*, 112 Cal. App. 3d at 210, 169 Cal. Rptr. at 284. The respondent was alleged to have committed these acts with the knowledge that the husband had molested women and children in the past and that it was reasonably foreseeable he would do so again if left alone with the children on the premises. The court concluded that, by encouraging and inviting the children to be alone with the husband under circumstances where he would have an opportunity to commit such misconduct, the respondent could be held to have intentionally acted and unreasonably exposed the children to harm. *Farmer*, 112 Cal. App. 3d at 210, 169 Cal. Rptr. at 284.

■ In the present case, we conclude that the allegations in the underlying complaint are affirmative acts couched in terms of negligence. See *Farmer*, 112 Cal. App. 3d at 211, 169 Cal. Rptr. at 285. We therefore find that the exclusion provision that bars coverage for bodily injury that is "expected or intended" from the standpoint of the aunt applies and that Westfield has no duty to defend or indemnify the aunt under the allegations of the underlying complaint. We are not persuaded by the minors' attempt to recast as negligence the expected or intended acts of an insured in an attempt to defeat the intended-acts exclusion of Westfield's policies.

We find further support for our decision today in *Jessica M.F. v. Liberty Mutual Fire Ins. Co.*, 209 Wis. 2d 42, 561 N.W.2d 787 (1997). In that case, grandchildren and their parents filed suit against their grandfather and grandmother for sexual abuse by the grandfather. The allegations against the grandmother were for her negligent failure

to protect and supervise the children and to prevent the grandfather from committing the sexual abuse. The plaintiffs alleged, among other things, that the grandmother " 'knew or *** should have known that [grandfather] was engaging in sexual contact and engaging in sexually explicit conduct with [the grandchildren].' " *Jessica M.F.*, 209 Wis. 2d at 46, 561 N.W.2d at 789. In denying coverage to the grandmother, the reviewing court construed this allegation not as a negligent act but as an intentional one for insurance coverage purposes. *Jessica M.F.*, 209 Wis. 2d at 60, 561 N.W.2d at 795. For the reasons expressed above, we believe that a similar conclusion is warranted here in light of the minors' allegations that the aunt knew or should have known that her conduct would result in injury to the minors.

Where the factual allegations in a civil case compel a conclusion, as a matter of law, that an insured's act was expected or intended, a summary judgment is properly entered in favor of the insurer whose policy excludes coverage for expected or intended acts. *Prudential Property & Casualty Insurance Co. v. Kerwin*, 215 Ill. App. 3d 1086, 1090-91 (1991). Because the duty to defend is broader than the duty to indemnify, if an insurer owes no duty to defend, it owes no duty to indemnify. *American Family Mutual Insurance Co. v. Enright*, 334 Ill. App. 3d 1026, 1029 (2002), citing *Crum & Forster Managers Corp.*, 156 Ill. 2d at 393. Because the underlying complaint seeks recovery from the aunt for her participatory conduct resulting in the sexual abuse of the minors, we conclude that the trial court properly held that Westfield had no duty to defend or, therefore, to indemnify the aunt in the underlying suit. We have reviewed the minors' remaining arguments and find them to be without merit. Accordingly, we affirm the trial court's grant of summary judgment in favor of Westfield.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and O'MALLEY, JJ., concur.