# Illinois Official Reports

## Appellate Court

*Allstate Indemnity Co. v. Contreras*, 2018 IL App (2d) 170964

| | |
|---|---|
| Appellate Court Caption | ALLSTATE INDEMNITY COMPANY, Plaintiff-Appellee, v. ALEJANDRA CONTRERAS, ADAN CONTRERAS, JASMINE'S DAY CARE, and JANE DOE, as Mother and Next Friend of Janie Doe and Janet Doe, Minors, Defendants (Jane Doe, as Mother and Next Friend of Janie Doe and Janet Doe, Minors, Defendant-Appellant). |
| District & No. | Second District<br>Docket No. 2-17-0964 |
| Filed | July 20, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, Nos. 16-L-178, 17-MR-709; the Hon. Diane E. Winter, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Bridget C. Duignan, of Latherow & Duignan, of Chicago, for appellant.<br><br>Dean Haritos, Cynthia Ramirez, and Peter C. Morse, of Morse Bolduc & Dinos, LLC, of Chicago, for appellee. |

| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices Jorgensen and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1    Allstate Indemnity Company (Allstate) filed a complaint for declaratory judgment (see 735 ILCS 5/2-701 (West 2016)) in the circuit court of Lake County against Alejandra Contreras, Adan Contreras, Jasmine's Day Care, and Jane Doe, as mother and next friend of Janie Doe and Janet Doe. Allstate claimed that it owes no duty to defend or indemnify Jasmine's Day Care or Alejandra in connection with a lawsuit filed against them by Jane. The court granted Allstate's motion for judgment on the pleadings, agreeing with Allstate that an "expected injury" exclusion in the applicable homeowner's insurance policy precludes coverage. Jane appeals. For the reasons that follow, we reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3    Jane filed a two-count complaint in the circuit court of Lake County on behalf of Janie and Janet against Jasmine's Day Care and Alejandra. That underlying action was docketed in the circuit court as No. 16-L-178. Count I of the complaint pertained to Janie's injuries, and count II pertained to Janet's injuries. Jane alleged as follows. Alejandra owned and operated Jasmine's Day Care, which was a licensed "day care home" in Park City, Illinois. Alejandra was responsible for caring for the children who were enrolled in the day care. In September 2012, Jane enrolled Janie and Janet in Jasmine's Day Care. On or about December 21, 2012, Jane learned that Janie had been repeatedly sexually abused by Alejandra's spouse, Adan, while at the day care.[1] Although Adan resided at the address where the day care operated, he was not an "assistant" of the day care as defined by section 406.10 of title 89 of the Illinois Administrative Code (89 Ill. Adm. Code 406.10 (2016)).[2] Upon discovering that Janie had been abused, Jane removed both of her daughters from the day care. Shortly thereafter, she learned that Janet had also been the victim of sexual abuse by Adan while enrolled at the day care.

¶ 4    According to Jane's complaint, as the owner and operator of Jasmine's Day Care, Alejandra was obligated to supervise Janie and Janet while they were under her care. Alejandra was also obligated to protect the children from "exploitation, neglect, and abuse while under her care." Both counts of the complaint alleged that Jasmine's Day Care, through Alejandra, was negligent in the following ways:

"a. Failed to provide adequate supervision while Janie Doe was in her care;

b. Allowed her spouse, Adam [*sic*] Contreras, who was not an assistant, to be alone with Janie Doe, in violation of 89 Ill. Adm. Code 406.14(k);

---

[1]The complaint erroneously referred to Adan as "Adam."

[2]Some of the listed "qualifications for assistants" are that they pass a background check and be "free of reportable communicable disease and physical or mental conditions that could interfere with child care responsibilities." 89 Ill. Adm. Code 406.10(a), (e) (2016).

- 2 -

c. Failed to adequately protect Janie Doe from exploitation, neglect and abuse while under her care; and

d. Was otherwise careless and negligent."

Janie and Janet were allegedly "emotionally and physically injured" as a result of these negligent acts and omissions.

¶ 5 Allstate subsequently filed a two-count complaint for declaratory judgment against Alejandra, Adan, Jasmine's Day Care, and Jane. This action was docketed in the circuit court as No. 17-MR-709. Only count I of the complaint for declaratory judgment is relevant to this appeal. Allstate alleged that it issued a homeowner's insurance policy to Alejandra and Adan, which was in effect at the time of the misconduct detailed in the complaint in the underlying action. The policy contained an endorsement for home-day-care coverage. Coverage X of the policy also provided family liability protection as follows:

"Subject to the terms, conditions and limitations of this policy, *Allstate* will pay damages which an *insured person* becomes legally obligated to pay because of *bodily injury* or *property damage* arising from an *occurrence* to which this policy applies, and is covered by this part of the policy." (Emphases in original.)

Coverage X contained the following "expected injury" exclusion:

"Losses We Do Not Cover Under Coverage X:

1. We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:

(a) such *bodily injury* or *property damage* is of a different kind or degree than that intended or reasonably expected; or

(b) such *bodily injury* or *property damage* is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such *insured person* is actually charged with, or convicted of a crime." (Emphases in original.)

¶ 6 According to Allstate's complaint for declaratory judgment, the injuries that Janie and Janet suffered did not arise out of an accident but were instead the reasonably expected result of the repeated sexual abuse by Adan. Citing multiple cases, Allstate alleged that, "[i]n Illinois, where an adult is accused of sexually abusing a minor[,] an intent to injure is inferred as a matter of law and an insurer has no duty to defend." Allstate thus maintained that it is not obligated to defend or indemnify Jasmine's Day Care or Alejandra in connection with the claims asserted against them in the underlying action.

¶ 7 Allstate subsequently filed a motion for judgment on the pleadings, arguing that the "expected injury" exclusion in the policy bars coverage in connection with the allegations of the underlying action. Jane filed a memorandum opposing Allstate's motion. She emphasized that Adan is not a named defendant in the underlying action and that Jasmine's Day Care and Alejandra are alleged to have acted negligently, not intentionally. In its reply brief, Allstate cited, for the first time, the following "joint obligations" clause from the general definitions section of the policy:

"The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as *you* or *your*. This means that the responsibilities, acts and

omissions of a person defined as *you* or *your* will be binding upon any other person defined as *you* or *your*.

The terms of this policy impose joint obligations on persons defined as an *insured person*. This means that the responsibilities, acts and failures to act of a person defined as an *insured person* will be binding upon another person defined as an *insured person*." (Emphases in original.)

¶ 8    The court granted Allstate's motion for judgment on the pleadings. The court's written order indicates that (1) "no liability insurance coverage is available to any insured under Allstate's policy with respect to the bodily injury claims being asserted against them in [the underlying action]" and (2) "Allstate is not obligated to defend or indemnify Alejandra Contreras or Jasmine's Day Care with respect to [the underlying action]." Jane filed a timely notice of appeal.

¶ 9                                            II. ANALYSIS

¶ 10    Jane argues that Allstate must defend and indemnify Jasmine's Day Care and Alejandra in connection with the claims asserted against them in the underlying action. Jane concedes that Allstate would have no duty to defend or indemnify Adan for his intentional acts of sexually abusing Janie and Janet. She emphasizes, however, that she did not name Adan as a defendant in the underlying action. To that end, Jane proposes that it is necessary to distinguish between Adan's intentional acts and the "independent" negligent acts of Jasmine's Day Care and Alejandra. Relying principally on *Continental Casualty Co. v. McDowell & Colantoni, Ltd.*, 282 Ill. App. 3d 236 (1996), Jane posits that "courts are careful to separate which insureds committed what acts in determining which insured, if any, are entitled to a defense under potentially covered claims." Anticipating Allstate's argument premised on the "joint obligations" clause in the policy, Jane notes that this court rejected a similar argument in *Wasik v. Allstate Insurance Co.*, 351 Ill. App. 3d 260 (2004).

¶ 11    Allstate responds that Adan's intent to harm Janie and Janet is inferred as a matter of law, given the allegations of sexual abuse. According to Allstate, "the basis of the tort" was Adan's intentional abuse, and the negligence allegations in Jane's complaint amounted to a "transparent attempt to trigger insurance coverage." Furthermore, Allstate argues, given that Janie's and Janet's injuries arose out of Adan's intentional or criminal acts and given that the policy excludes coverage for bodily injury that results from the intentional or criminal acts of "any insured person," there is no coverage for the claims asserted against the other insured parties (Jasmine's Day Care and Alejandra) for those same injuries. Allstate also disagrees with Janet's claim that the negligent acts of Jasmine's Day Care and Alejandra were independent of Adan's intentional acts. Allstate instead maintains that the minors' injuries "arose from, are related to, and are dependent on" Adan's excluded acts, insofar as the minors would not have been injured by the alleged negligent supervision in the absence of the sexual abuse by Adan.

¶ 12    To the extent that *McDowell & Colantoni* supports Jane's position, Allstate submits that the case is factually distinguishable from the present case and was incorrectly decided. Allstate further maintains that it is improper for Jane to focus on the fact that Jasmine's Day Care and Alejandra did not commit intentional or criminal acts, given the policy's "joint obligations" clause. Allstate argues that this court's analysis of an identical "joint obligations" clause in *Wasik* does not apply to the present case, given that "*Wasik* dealt with a

first party fire insurance claim and has only been cited in first party insurance claim situations."

¶ 13    As noted above, the trial court granted Allstate's motion for judgment on the pleadings. When ruling on such a motion, the court must consider any judicial admissions in the record, any matters that are subject to judicial notice, and the facts that are apparent from the face of the pleadings. *St. Paul Fire & Marine Insurance Co. v. City of Waukegan*, 2017 IL App (2d) 160381, ¶ 25. The court should enter judgment on the pleadings only where "the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *St. Paul*, 2017 IL App (2d) 160381, ¶ 25. Our review is *de novo*. *St. Paul*, 2017 IL App (2d) 160381, ¶ 25.

¶ 14    To determine whether Allstate owes a duty to defend Jasmine's Day Care and Alejandra with respect to the claims asserted against them in the underlying action, we must compare the allegations of the underlying complaint to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Outboard Marine Corp.*, 154 Ill. 2d at 108. When interpreting an insurance policy, we must ascertain the parties' intent by construing the policy as a whole in light of the risks undertaken, the purposes of the entire contract, and the subject matter that is insured. *Empire Indemnity Insurance Co. v. Chicago Province of the Society of Jesus*, 2013 IL App (1st) 112346, ¶ 33. If the terms are clear and unambiguous, we must afford them their plain, ordinary, and popular meaning. *Empire Indemnity*, 2013 IL App (1st) 112346, ¶ 33. If the terms are ambiguous and susceptible to more than one reasonable interpretation, however, we will construe them against the insurer as the party that drafted the policy. *Empire Indemnity*, 2013 IL App (1st) 112346, ¶ 33. We construe policy exclusions narrowly, in favor of coverage. *Robert R. McCormick Foundation v. Arthur J. Gallagher Risk Management Services, Inc.*, 2016 IL App (2d) 150303, ¶ 9.

¶ 15    Jane's complaint in the underlying action alleged that Adan repeatedly sexually abused Janie and Janet. Due to the nature of those allegations, Allstate is correct that Adan's intent to injure the children is presumed as a matter of law. See *Pekin Insurance Co. v. Dial*, 355 Ill. App. 3d 516, 521 (2005) ("An insurance company is under no duty to defend or indemnify an insured who sexually abuses a minor, because the nature of the conduct itself establishes as a matter of law that the insured expected or intended to injure the victim."); *Hartford Insurance Co. of Illinois v. Kelly*, 309 Ill. App. 3d 800, 804-05 (1999) ("[W]here an underlying complaint sets forth factual allegations of sexual misconduct, specific intent to harm is inferred as a matter of law, especially when the victims are minors."). Jane does not dispute this.

¶ 16    In their briefs, the parties discuss a number of cases addressing whether an insurance company must defend its insured in a civil action when that insured is accused of *personally committing* sexual abuse. Those cases do not answer the more specific question that is the subject of this appeal: Does Adan's intent to injure Janie and Janet preclude coverage for his co-insureds, Jasmine's Day Care and Alejandra, where they were allegedly negligent for failing to prevent the sexual abuse? Only one of the Illinois cases discussed in the parties' briefs, *State Farm Fire & Casualty Co. v. Watters*, 268 Ill. App. 3d 501, 502 (1994), actually involved allegations that one insured party (a mother) negligently failed to prevent another insured party (her son) from committing sexual abuse. Unfortunately, there was no issue

raised on appeal in *Watters* as to whether the insurer owed a duty to defend the mother, and the court "decline[d] to discuss and rule on [that] issue *sua sponte*." *Watters*, 268 Ill. App. 3d at 512.

¶ 17 Nevertheless, *Westfield National Insurance Co. v. Continental Community Bank & Trust Co.*, 346 Ill. App. 3d 113 (2003), squarely addressed the issue presented in this appeal, and it guides our analysis. In accordance with our directions, the parties discussed *Westfield National* during oral argument in this matter.

¶ 18 A. *Westfield National*

¶ 19 In *Westfield National*, two minors were allegedly sexually abused by their aunt's husband, Librado Valdez, during visits to his home. *Westfield National*, 346 Ill. App. 3d at 115. Continental Community Bank and Trust Company (Continental), which was the minors' next friend as well as the guardian of their estates, filed a lawsuit against the minors' aunt, alleging that she "owed 'a duty to protect each child from harm and danger which she knew or should have known existed.' " *Westfield National*, 346 Ill. App. 3d at 115. Continental alleged that the aunt breached this duty by failing to:

" '(a) Report to the parents of [the minors] the sexual molesting of [the minors] which she knew or should have known because of the conduct of her husband ***[;]

(b) Advise[ ] the parents of [the minors] of the prior criminal involvement with minors involving *** Valdez in the State of Florida;

(c) Report to the parents of [the minors] inappropriate physical encounters which were occurring involving [the minors] and *** Valdez;

(d) Desist from bringing [the minors] to sit on the lap of *** Valdez;

(e) Desist from creating a sexually charged atmosphere by promoting a collective viewing of movies which involved naked actors and actresses;

(f) Desist during said movie viewings the encouragement of comments involving the naked bodies of actresses applicable to the pubescent and pre-pubescent [minors];

(g) Ascertain the activities of *** Valdez at such times as he would leave the marital bedroom and visit the bed of [the minors];

(h) Desist from directing *** [the minors] to sit on the lap of the partially clad *** Valdez for the purposes of keeping him warm;

(i) Investigate [the] reason why she discovered [one of the minors] locked in the bathroom and crying after an encounter with *** Valdez;

(j) Desist from providing and encouraging [the minors] from wearing minimal and provocative clothing when interacting with *** Valdez; [and]

(k) Desist from the isolating of [the minors] from each other so as to secure a one-on-one intimacy with *** Valdez.' " *Westfield National*, 346 Ill. App. 3d at 115.

According to the underlying complaint, " 'As a direct and proximate result of one or more of the aforesaid enabling acts or omissions, *** [the minors] were exposed to and submitted to *** Valdez, at which time, each of them was molested and suffered injuries of a personal and pecuniary nature.' " *Westfield National*, 346 Ill. App. 3d at 116.

¶ 20 The aunt tendered the defense to her homeowner's insurance carrier, Westfield National Insurance Company (Westfield National). *Westfield National*, 346 Ill. App. 3d at 116.

Westfield National filed a declaratory judgment action claiming that it owed no duty to defend or indemnify the aunt, due to an "expected or intended" injury exclusion in the policy. *Westfield National*, 346 Ill. App. 3d at 116. Specifically, the policy excluded coverage for bodily injury or property damage " 'which is expected or intended by the Insured' "; it also excluded coverage for " 'injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an insured.' " *Westfield National*, 346 Ill. App. 3d at 117. The trial court granted Westfield National's motion for summary judgment, and Continental appealed. *Westfield National*, 346 Ill. App. 3d at 116.

¶ 21        On appeal, we explained that "Illinois courts have adopted an 'inferred-intent' rule," whereby it is presumed that a person who sexually abuses a minor intends to injure the minor. *Westfield National*, 346 Ill. App. 3d at 118. We noted, however, that no Illinois court had yet considered whether an insurance company would owe a duty to defend or indemnify the abuser's spouse. *Westfield National*, 346 Ill. App. 3d at 120. We found guidance in a line of cases involving the "innocent-insured doctrine"—cases in which courts had refused to impute the intent of one insured to another where, for example, one spouse intentionally caused a home fire. *Westfield National*, 346 Ill. App. 3d at 120-21. Based on the reasoning of those cases, we declined to impute Valdez's intent to his wife, and we "instead focus[ed] on the provisions of the policy and the allegations of the underlying complaint in determining whether the intentional-acts exclusion applie[d] to preclude Westfield from having a duty to defend or indemnify the aunt." *Westfield National*, 346 Ill. App. 3d at 121.

¶ 22        Looking to the specific factual allegations of the complaint, we concluded that "the aunt should have been cognizant of her own conduct toward the minors and *vis-à-vis* her husband, Valdez." *Westfield National*, 346 Ill. App. 3d at 122. We explained that the allegations showed that the aunt reasonably should have anticipated or expected the injuries to the minors as "a natural and probable result of her enabling acts, regardless of whether she could anticipate the precise injury the minors would actually suffer." *Westfield National*, 346 Ill. App. 3d at 122. Although the complaint claimed that the aunt was merely negligent, the supporting facts more accurately detailed "intentional conduct on the part of the aunt, and the minors' cause of action based on negligence [was] 'a transparent attempt to trigger insurance coverage.' " *Westfield National*, 346 Ill. App. 3d at 122 (quoting *Watters*, 268 Ill. App. 3d at 510). In other words, to say that the aunt was "an 'innocent' spouse" would have required us to ignore the facts alleged in the complaint. *Westfield National*, 346 Ill. App. 3d at 123. Accordingly, we determined that, "[b]ecause the underlying complaint seeks recovery from the aunt for her participatory conduct resulting in the sexual abuse of the minors, *** the trial court properly held that Westfield had no duty to defend or, therefore, to indemnify the aunt in the underlying suit." *Westfield National*, 346 Ill. App. 3d at 124.

¶ 23                                    B. The Allstate Policy

¶ 24        *Westfield National* establishes that we cannot simply impute Adan's intentional conduct to Jasmine's Day Care and Alejandra for purposes of the "expected injury" exclusion. We must instead consider the specific policy language in light of the facts alleged in the underlying complaint. We turn to the relevant language of Allstate's policy.

¶ 25        The policy that Allstate issued to Alejandra and Adan contained the following "expected injury" exclusion:

"1. *We* do not cover *any bodily injury* or *property damage* intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:

(a) such *bodily injury* or *property damage* is of a different kind or degree than that intended or reasonably expected; or

(b) such *bodily injury* or *property damage* is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such *insured person* is actually charged with, or convicted of a crime." (Emphases in original.)

¶ 26    As Allstate notes, the use of the phrase "any insured person" in this exclusion is arguably broader than if the provision had said "the insured person." See *Allstate Insurance Co. v. Smiley*, 276 Ill. App. 3d 971, 979 (1995) (determining that the use of the words "an" and "any" broadened a certain policy exclusion). During oral argument, Allstate attempted to distinguish *Westfield National* on the basis that the policy at issue in that case used "the insured" language as opposed to "any insured" language. According to Allstate, given that Janie's and Janet's injuries arose out of Adan's intentional or criminal acts and given that the policy excludes coverage for bodily injury that results from the intentional or criminal acts of "any insured person," there is no coverage for the claims asserted against Jasmine's Day Care and Alejandra for those same injuries. In further support of its position, Allstate relies on the "joint obligations" clause found in the general definitions section of the policy.

¶ 27    Although Allstate is correct that the "expected or intended" injury exclusion at issue in *Westfield National* "excluded from coverage bodily injury or property damage 'which is expected or intended by *the Insured*,' " in the very next sentence of the opinion we noted that the policy "also stated that personal injury insurance did not apply to 'injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of *an insured*.' " (Emphases added.) *Westfield National*, 346 Ill. App. 3d at 117. We did not articulate a distinction between "the insured" language and "an" or "any insured" language.

¶ 28    Moreover, Allstate's interpretation of the "any insured" language in its policy, along with its interpretation of the "joint obligations" clause, is at odds with our decision in *Wasik*. In that case, the plaintiff made a claim under his homeowner's insurance policy after a fire destroyed his garage. *Wasik*, 351 Ill. App. 3d at 261. Allstate denied the claim because the plaintiff's stepson, who was also insured under the policy, intentionally started the fire. *Wasik*, 351 Ill. App. 3d at 261, 264. The policy provided that Allstate would " 'not cover any loss or *occurrence* in which any *insured person* has concealed or misrepresented any material fact or circumstance.' " (Emphases in original.) *Wasik*, 351 Ill. App. 3d at 265. The policy also contained the following exclusion with respect to coverage for property damage:

" 'We do not cover loss to the property described in Coverage A—Dwelling Protection[,] *** Coverage B—Other Structures Protection [or Coverage C—Personal Property Protection] consisting of or caused by:

* * *

7. The failure by any *insured person* to take all reasonable steps to preserve property when the property is endangered by a cause of loss *we* cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an *insured person*.

9. Intentional or criminal acts of or at the direction of any *insured person*, if the loss that occurs:

   a) may be reasonably expected to result from such acts; or

   b) is the intended result of such acts.

This exclusion applies regardless of whether or not the *insured person* is actually charged with, or convicted of a crime.' " (Emphases in original.) *Wasik*, 351 Ill. App. 3d at 265.

The trial court granted summary judgment in favor of Allstate based on these exclusions, even though the court believed that the plaintiff was an "innocent insured" in the sense that he was not involved with his stepson's misconduct. *Wasik*, 351 Ill. App. 3d at 261.

¶ 29 On appeal, after reviewing several cases analyzing the innocent-insured doctrine, we reversed the trial court's judgment. We explained:

"Although the [exclusionary] clauses could be read as entirely prohibiting coverage for a loss caused by the act or failure to act of 'any' insured, they do not clearly state that the policy will be void or coverage will be excluded as to all insureds in the event of some improper behavior by 'any' insured." *Wasik*, 351 Ill. App. 3d at 266.

Nor were we impressed by Allstate's reliance on the "joint obligations" clause in the policy:

"The 'joint obligations' language is not a part of any of the exclusionary clauses but is instead found among the general policy declarations. We agree with plaintiff that one plausible construction of the joint obligations clause is that it refers to the general obligations to pay premiums and to take certain actions before and after a loss and that a reasonable insured would not understand the clause to exclude coverage for all insureds when coverage is excluded for one insured. *** The joint obligations clause is, at best, ambiguous. Therefore, we will not interpret it broadly enough to exclude coverage for an innocent insured when another insured has intentionally or criminally caused a loss." *Wasik*, 351 Ill. App. 3d at 267.

¶ 30 Allstate attempts to distinguish *Wasik* on the basis that that case involved a claim *by an insured* arising out of property damage, as opposed to a third-party claim *against an insured*. According to Allstate, unlike a first-party claim for property damage, there is no truly "innocent insured" in the third-party-liability-insurance context, given that there is a claim asserted against the insured for his or her own alleged wrongful acts or omissions.

¶ 31 Allstate fails to account for the fact that in *Westfield National* we relied on property-claim cases that had analyzed the innocent-insured doctrine. Additionally, in a relatively recent opinion addressing the innocent-insured doctrine, our supreme court suggested that the doctrine could apply where an insured tenders the defense of a tort claim to his or her insurer. See *Illinois State Bar Ass'n Mutual Insurance Co. v. Law Office of Tuzzolino & Terpinas*, 2015 IL 117096, ¶ 30 ("[T]he innocence of an insured matters a great deal when another insured's wrongdoing triggers a policy exclusion, and a dispute arises over whether the insurer has a duty to defend the innocent insured under a policy that undisputedly was in effect."). Allstate's attempt to distinguish *Wasik* on the basis that it involved an insured's claim for property damage thus fails.

¶ 32 In light of *Wasik*, although the "expected injury" clause here uses the words "any insured" and although the policy also contains a "joint obligations" clause, we decline Allstate's invitation to hold that Adan's intent to injure Janie and Janet categorically

precludes a defense for the other insureds relating to claims for the same injuries. Instead, as in *Westfield National*, we must look to the specific factual allegations asserted against Jasmine's Day Care and Alejandra in the underlying action to determine whether the "expected injury" exclusion applies to their particular conduct.

¶ 33                    C. The Allegations of the Underlying Complaint

¶ 34     Turning to the allegations of the underlying complaint, we find a critical distinction between *Westfield National* and the present case. In the underlying complaint in *Westfield National*, the aunt was alleged to have engaged in "participatory conduct resulting in the sexual abuse of the minors" by her husband. *Westfield National*, 346 Ill. App. 3d at 124. Examples of such "participatory conduct" included directing the minors to sit on her husband's lap while he was partially clad, creating a sexually charged atmosphere by showing inappropriate movies, and encouraging the minors to wear minimal and provocative clothing when interacting with her husband. *Westfield National*, 346 Ill. App. 3d at 115. Despite the underlying plaintiff's attempts in *Westfield National* to characterize the aunt's actions and omissions as mere negligence, we emphasized that her conduct demonstrated that the minors' injuries were expected as a "natural and probable result of her enabling acts." *Westfield National*, 346 Ill. App. 3d at 122.

¶ 35     Unlike the underlying plaintiff in *Westfield National*, Jane did not allege that Jasmine's Day Care or Alejandra engaged in participatory conduct that resulted in Adan's sexual abuse of Janie and Janet. Nor did Jane allege that Jasmine's Day Care or Alejandra knew (or even should have known) that Adan would abuse the children. *Cf. Empire Indemnity*, 2013 IL App (1st) 112346, ¶ 40 (insurers owed no duty to defend a Jesuit society against lawsuits claiming that one of its priests committed sexual abuse, because the underlying complaints alleged that the society had prior knowledge that this particular priest had abused other minors). Jane merely alleged that Jasmine's Day Care and Alejandra (1) failed to adequately supervise the children; (2) failed to protect them from exploitation, neglect, and abuse; and (3) improperly allowed Adan to be alone with them.

¶ 36     According to Allstate, to hold Jasmine's Day Care or Alejandra liable for negligent supervision, Jane will ultimately have to prove that they expected the injuries to Janie and Janet, which would preclude insurance coverage. In her complaint, however, Jane invokes the Illinois Administrative Code, not just the common law, as the source of the legal duty. Allstate does not direct our attention to any authority construing the particular administrative regulation that Jane claims Jasmine's Day Care and Alejandra violated. Allstate merely assumes, without providing supporting authority, that Jane will be required to plead and prove more specific facts that will exclude insurance coverage for Jasmine's Day Care and Alejandra.

¶ 37     Moreover, the legal sufficiency of the underlying complaint is not before us in this appeal. Instead, to determine whether Allstate owes a duty to defend Jasmine's Day Care and Alejandra, we must consider whether "the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage." *Outboard Marine Corp.*, 154 Ill. 2d at 108. A duty to defend may exist even if Jane's allegations ultimately prove to be groundless, false, or fraudulent. *Country Mutual Insurance Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 38. Given the absence of any specific factual allegations in the underlying complaint that would trigger the "expected injury" exclusion with respect to Jasmine's Day Care or

Alejandra, Allstate has not met its burden to demonstrate that it owes no duty to defend its insureds. Accordingly, Allstate is not entitled to judgment on the pleadings.

¶ 38 In closing, we note that Jane relies heavily in her brief on *McDowell & Colantoni* in support of her argument that Jasmine's Day Care's and Alejandra's negligent conduct was independent of Adan's intentional conduct. Relying primarily on *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96 (2000), Allstate responds that *McDowell & Colantoni* was incorrectly decided and that the claims asserted against Jasmine's Day Care and Alejandra were related to and dependent on Adan's excluded acts. Neither *McDowell & Colantoni* nor *Northbrook* involved allegations that an insured party sexually abused a minor. As our analysis has been guided by the more directly relevant authority in *Westfield National*, which the parties addressed thoroughly at oral argument, we need not comment on the parties' dispute in their briefs as to whether *McDowell & Colantoni* was correctly decided. Similarly, as there is Illinois case law on point, we decline to comment on the foreign authority that Allstate cites throughout its brief. See *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 395 (2005) ("When there is Illinois case law directly on point, we need not look to case law from other states for guidance.").

¶ 39                                    III. CONCLUSION

¶ 40 For the reasons stated, we reverse the judgment of the circuit court of Lake County and remand for further proceedings.

¶ 41 Reversed and remanded.