2022 IL App (2d) 210389-U
No. 2-21-0389
Order filed November 28, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ILLINOIS SCHOOL DISTRICT AGENCY, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee/Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19-MR-601 |
| | ) | |
| BOARD OF EDUCATION OF EAST | ) | |
| AURORA SCHOOL DISTRICT 131 a/k/a | ) | |
| East Aurora School District 131, and | ) | |
| TWILA GARZA, | ) | Honorable |
| | ) | Kevin T. Busch, |
| Defendants-Appellants/Cross-Appellees.) | | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Brennan and Justice Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Trial court did not err in granting plaintiff summary judgment on its complaint for declaratory judgment that it did not owe the defendants insurance coverage; plaintiff could not cross-appeal from judgment in its favor.

¶ 2    This case involves an insurance coverage dispute. Two complaints were filed against Juan Avendano, a teacher at Bardwell Elementary School in Aurora, alleging that he had sexually abused two different students.   Bardwell is in the defendant East Aurora School District 131 (the District).   Bardwell's principal is the defendant Twila Garza.   The complaints alleged the District and Garza engaged in willful and wanton conduct by hiring Avendano, not investigating

claims about him, and allowing him to remain in the classroom. The defendants sought defense coverage from the plaintiff, the Illinois School District Agency (ISDA). ISDA responded by filing a declaratory judgment action alleging that it did not owe the defendants a duty to defend. The circuit court of Kane County granted ISDA summary judgment on its declaratory judgment action. The defendants appeal from that order. ISDA cross-appeals from one of the trial court's interlocutory orders. We affirm the trial court's summary judgment in favor of ISDA and dismiss ISDA's cross-appeal.

¶ 3                                I. BACKGROUND

¶ 4      ISDA is an intergovernmental cooperative that issues insurance policies to members of its cooperative. ISDA issued insurance policies to the District, which is a member of the cooperative, effective for the policy period between July 1, 2014 and July 1, 2015.

¶ 5      On October 2, 2018, Jane Doe, a minor by her mother and next friend Jennifer Doe, filed an action against the defendants alleging that they had engaged in willful and wanton misconduct by allowing Jane's kindergarten teacher, Juan Avendano, to sexually abuse her. The complaint alleged that Avendano began sexually abusing Jane Doe in September 2014.

¶ 6      On April 18, 2019, Mary Doe, a minor by her mother and next friend Jill Doe, filed an action against the defendants alleging that they had engaged in willful and wanton misconduct by allowing its kindergarten teacher Avendano to sexually abuse her. The complaint alleged that Avendano began sexually abusing Mary Doe in August 2016.

¶ 7      The defendants did not report the allegation of abuse to ISDA until March 2018.

¶ 8      On May 23, 2019, ISDA filed a complaint for a declaratory judgment asserting that it did not owe the defendants a defense or indemnity related to the policy that it issued to the defendants that covered the period between July 1, 2014, and July 1, 2015. After amending its complaint,

ISDA filed a second amended complaint on February 5, 2020. In its second amended complaint, ISDA raised five counts asserting that it did not owe the defendants a duty to defend or indemnify because (1) the defendants did not timely inform it of the alleged abuse; (2) the allegations in the underlying complaints did not establish an "occurrence" as defined in the plan of coverage; (3) the alleged injuries occurred because of an intentional act; (4) the injuries for which recovery was sought were in connection with alleged sexual abuse; and (5) ISDA owed no duty to the defendants for abuse that occurred after the defendants had knowledge of the alleged abuse.

¶ 9 On July 23, 2020, the defendants filed a motion for a judgment on the pleadings as to count II of ISDA's complaint. The defendants argued that the underlying allegations set forth an "occurrence," and therefore judgment on count II should be entered for them.

¶ 10 On November 13, 2020, the trial court denied the defendants' motion for judgment on the pleadings. The trial court found that even though the underlying allegations of the complaints set forth an "occurrence," that did not mean that the defendants were entitled to any coverage under the parties' insurance contract.

¶ 11 On March 29, 2021, ISDA filed a motion for summary judgment on its second amended complaint. On June 21, 2021, following a hearing, the trial court granted ISDA's motion. The trial court found that there was no ambiguity in the relevant parts of the plan of coverage (plan). The trial court explained that only two coverage parts of ISDA's plan were potentially applicable—the Commercial General Liability Coverage Part (CGL) and the Sexual Abuse Coverage Part. The trial court found that it was the intent of the parties that all claims arising out of or in connection with sexual abuse be considered for coverage exclusively under the Sexual Abuse Coverage Part of the plan. That provision of the plan required that any allegation of sexual abuse be reported within 60 days of when the plan ended. However, the defendants did not report

any abuse until March 2018, which was more than two years after the coverage ended in July 2015. The trial court also found that coverage was excluded under the CGL part because the allegations were based on sexual abuse. The trial court therefore determined that ISDA did not owe a duty to defend or indemnify the defendants regarding the complaints filed in the Jane Doe and Mary Doe litigation.

¶ 12    On July 14, 2021, the defendants filed a timely notice of appeal from the trial court's June 21, 2021, order. On July 23, 2021, ISDA filed a timely notice of cross-appeal from that portion of the trial court's November 13, 2020, order that found the allegations in the underlying lawsuits constituted an "occurrence" as that word is defined in the plan.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, the defendants argue that the trial court erred in interpreting the parties' insurance contract and determining that ISDA did not owe a duty to defend and indemnify them regarding the underlying complaints. Because an insurance policy is a contract, the rules applicable to contract interpretation govern the interpretation of an insurance policy. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 416 (2006). Our primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). If the language is unambiguous, the provision will be applied as written, unless it contravenes public policy. *Id.* The rule that policy provisions limiting an insurer's liability will be construed liberally in favor of coverage only applies where the provision is ambiguous. *Id.* A policy provision is not rendered ambiguous simply because the parties disagree as to its meaning. *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 372 (2007). Rather, an ambiguity will be found where the policy language is susceptible to more than one reasonable interpretation. *Founders Insurance*, 237 Ill.

2d at 433. While we will not strain to find an ambiguity where none exists, neither will we adopt an interpretation which rests on "gossamer distinctions" that the average person, for whom the policy is written, cannot be expected to understand. *Id.* When construing the language of an insurance policy, we must assume that every provision was intended to serve a purpose. Thus, an insurance policy must be considered as a whole; all of the provisions, rather than an isolated part, should be examined to determine whether an ambiguity exists. *Id.*

¶ 15 Summary judgment is appropriate where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003). When reviewing a trial court's award or denial of summary judgment, we must construe the pleadings, depositions, admissions, exhibits, and affidavits strictly against the moving party and liberally in favor of the non-moving party. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). The standard of review for the entry of summary judgment is *de novo*. *Clausen v. Carroll*, 291 Ill. App. 3d 530, 536 (1997).

¶ 16 We believe that the trial court properly determined that only two coverage parts of the plan are potentially implicated by the issues in the instant action are the CGL Part and the Sexual Abuse Coverage Part.[1] Section I of the CGL Part provides:

---

[1] For the first time on appeal, the defendants suggest that there is also coverage under the umbrella portion of the policy. As the defendants did not raise this argument in the trial court, nor do they develop it on appeal, it is forfeited. See *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 (arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal); Ill. S. Ct. R. 341(h)(7) (eff. Feb.6, 2013) ("[p]oints not argued are waived").

"COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Coverage Agreement

a.   We will pay those sums that the Member becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the coverage applies.   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A., B. and C. This coverage applies only to 'bodily injury' and 'property damage' which occurs during the Plan of Coverage period.   The 'occurrence' must take place in the 'coverage territory.' We will have the right and duty to defend any 'suits' seeking those damages.

* * *

2.   Exclusions

This coverage does not apply to

* * *

a.   'Bodily injury' or 'property damage' expected or intended from the standpoint of the member.   This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property or corporal punishment to any student or pupil administered by or at the direction of any Member.

* * *

q.   Any actual, threatened or alleged occurrence of Sexual Abuse or claim for damages, whether direct or consequential, any loss, cost or expense, or any cause of action in

connection with any actual, threatened or alleged Sexual Abuse or Sexual Harassment as defined below:

* * *

r.   Any claim for damages, whether direct or consequential, any loss, cost or expense, or any cause of action which is covered under any other Coverage of this Plan of Coverage, including but not limited to the Sexual Abuse Coverage set forth in Part III.B."

¶ 17   The Sexual Abuse Coverage Part provides in pertinent part:

"NOTICE:   THIS IS A CLAIMS MADE AND REPORTED COVERAGE; PLEASE READ THE SEXUAL ABUSE COVERAGE CAREFULLY. THIS COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE AGAINST A MEMBER DURING THE PLAN OF COVERAGE AND REPORTED DURING THE PLAN OF COVERAGE PERIOD OR WITHIN 60 DAYS AFTER THE END OF THE PLAN OF COVERAGE PERIOD.

SECTION I.—COVERAGE

1. Sexual Abuse Coverage Agreement

a.   Subject to the Common Plan of Coverage Conditions and the Exclusions, Limits of Coverage and other conditions of this Coverage, we will pay those sums that the Member becomes legally obligated to pay as damages because of a Claim first made against the member during the Plan of Coverage arising out of "Sexual Abuse" to which this Coverage applies.   Provided that:

(1)   The "Sexual Abuse" takes place after the Prior Occurrence Date and before the expiration date of the plan of Coverage, subject to Exclusion 1 of this Coverage; and

(2)   The following two events occur during the Plan of Coverage Period:

(a)    The member first becomes aware of a "Sexual abuse" occurrence that could give rise to a "Claim," or an actual "Claim" that has been made against the Member; and

(b)    The member has reported the "Sexual Abuse" occurrence or the actual "Claim" to us in accordance with the reporting requirements of Section IV of the General liability Coverage, no later than 60-days after the end of the plan of Coverage Period, and has complied with all of the other conditions and requirements of Section IV of the General Liability Coverage."

¶ 18    Reading the CGL Part and the Sexual Abuse Coverage Part in harmony, as we must, it is apparent that the defendants had to comply with the timing requirements of the Sexual Abuse Coverage Part in order to invoke coverage from ISDA.   This is apparent from section 2(r) of the exclusions in part I of the CGL which specifically refers to the Sexual Abuse Coverage set forth in the Sexual Abuse Coverage Part.   The defendants acknowledge that they did not inform ISDA of the claims against them within the time frame set forth in the Sexual Abuse Coverage Part.[2] As such, the trial court properly determined that ISDA was not obligated to defend or indemnify the defendants under the contract.

¶ 19    The defendants raise numerous arguments to evade the plain reading of the above provisions.   First, the defendants argue that the definition of sexual abuse set forth in the Sexual Abuse Coverage Part is ambiguous when considered in conjunction with the definition of sexual

---

[2]The defendants insist that they complied with the CGL Part of the policy and timely notified ISDA of the alleged sexual abuse.   However, as the Sexual Abuse Coverage Part of the policy was the part that set forth the applicable reporting requirements, the defendants' alleged compliance with the CGL Part is irrelevant.

abuse contained in the Safer Schools endorsement that is in the insurance policy. They note that, in the Safer Schools endorsement, the exclusion for sexual misconduct and molestation includes any allegations that "[a] Member negligently employed, investigated, trained, supervised *** or failed to so report or retained a person" accused of committing sexual assault. Because the Safer Schools endorsement specifically refers to negligent employment, investigation, training, and supervision while the Sexual Abuse Coverage Part does not, the defendants insist those two parts of the policy are contradictory and therefore ambiguous. Because the Sexual Abuse Coverage Part is ambiguous, they insist the sexual abuse exclusion therein is not applicable.

¶ 20    The Safer Schools endorsement provides coverage for when a school experiences a "Crisis Episode." A "Crisis Episode" is defined as being caused by an intentional criminal act that leads to someone being taken hostage or seriously injured. As such, that endorsement has nothing to do with the facts of this case. An insurance provision that "is completely unrelated to the present claim *** cannot be used to create any ambiguity in the coverage at issue." *Aurelius v. State Farm Fire & Casualty Co.*, 384 Ill. App. 3d 969, 978 (2008). Accordingly, the fact that the exclusion for sexual abuse is defined differently in the Safer Schools endorsement than in the Sexual Abuse Coverage Part is not a basis to find that the Sexual Abuse Coverage Part is ambiguous.

¶ 21    In a related argument, the defendants argue that the phrase "in connection with" in referring to claims of sexual abuse is overly broad, and therefore ambiguous and unenforceable. We disagree. Just because an exclusion is "overly broad" does not mean that a court will rewrite the parties' contract to limit it to what the parties have agreed. See *Sloan Biotechnology Laboratories, LLC v. Advanced Biomedical Inc.*, 2018 IL App (3d) 170020, ¶ 31 ("it is not the role of the court to alter a contract by construction or to make a new contract for the parties; rather, it

is the court's duty to interpret the contract that the parties have made for themselves"); see also *Hanover Insurance Co. v. MRC Polymers, Inc.*, 2020 IL App (1st) 192337, ¶ 37. In *Hanover Insurance*, the reviewing court noted that "[t]he language used in the exclusion [was] extremely broad" as it precluded coverage for (1) a loss (2) "based upon, arising out of or in any way related to" (3) a claim for a wrongful act (4) "by reason of or in connection with" the efficacy, performance, health or safety standards and/or proprietary licensing rights for any services, products, or technologies (5) "offered, promised, delivered, produced, processed, packaged, sold, marketed, distributed, advertised and/or developed" by the insured entity. *Id.* The reviewing court explained that, "where a policy provision is clear and unambiguous, its language must be taken in its plain, ordinary and popular sense. [Citation.]" *Id.* ¶ 38. Based on the clear and unambiguous language of the exclusion, the reviewing court determined that the insurer did not owe coverage under the policy. *Id.*

¶ 22 We agree with *Hanover Insurance* that a policy's use of "broad" language is not a basis by itself to invalidate the policy. In so ruling, we are unpersuaded by the defendant's reliance on *First Chicago Insurance Co. v. Molda*, 2015 IL App (1st) 140548, ¶ 45 and *Hartford Fire Insurance Co. v. Whitehall Convalescent and Nursing Home, Inc.*, 321 Ill. App. 3d 879, 889 (2001). Neither of those cases state that the phrase "in connection with" is ambiguous. *Molda* cites to *Whitehall* for the proposition that "in connection with" has been construed as being broad as well as vague, meaning that it must be construed strictly against the insurer. *Molda*, 2015 IL App (1st) 140548, ¶ 45. Here, even construing the phrase "in connection with" against ISDA, we conclude that the unambiguous language of the policy precluded coverage for the lawsuits arising from the allegations against Avendano.

¶ 23 We next turn to the defendants' arguments that ISDA should still be obligated to defend them because they are not the ones who allegedly sexually abused the victims. The defendants phrase this argument several different ways: (1) the exclusion at issue bars coverage for sexual abuse, not negligence; (2) they were not acting in concert with Avendano; (3) they are an innocent insured; (4) they are not the proximate cause of the victims' injuries; and (5) coverage analysis must focus on allegations of negligent hiring and not on intentional sexual assault. All these arguments share the same flaw as they require us to ignore the plain language of the insurance policy, that being any cause of action that is "in connection with" a claim for sexual abuse is excluded from coverage. Thus, the defendants' argument that the exclusion only pertains to sexual abuse and not negligence (or willful and wanton conduct which they were alleged to have committed) is wrong. Moreover, the fact that they were not acting in concert with Avendano is irrelevant under the terms of the policy.

¶ 24 In arguing that they are entitled to separate coverage because they are innocent insureds, the defendants rely on *Illinois State Bar Assn. Mutual Ins. Co. v. Law Firm of Tuzzolino & Terpinas*, 2015 IL 1170906 and *Allstate Indemnity Co. v. Contreras*, 2018 IL App (2d) 170964. Neither of these cases address a sexual abuse exclusion or discuss an exclusion for any cause of action that is in connection with alleged sexual abuse. See *Tuzzolino*, 2015 IL 1170906, ¶ 41 (determining that the innocent insured doctrine was not relevant where the misrepresentation in the policy application affected the "validity of the policy as a whole"); *Contreras*, 2018 IL App (2d) 170964 (exclusion that was for "expected or intended" bodily injury did not exclude coverage for "innocent" owner of day care center whose husband had abused one of the children at the day care center).

¶ 25    The defendants' argument that they are entitled to coverage because they were not the sole proximate cause of the victim's injuries is also without merit.    A party may be entitled to coverage if the claim against it is "wholly independent" of the claim that is excluded under the policy. *Northbrook Property & Casualty Insurance Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 99 (2000).    Where the purported covered claim is "derivative" of the excluded claim, or where it is directly related to or "inextricably intertwined" with the excluded claim, there is no coverage. *Allstate Insurance Co. v. Smiley*, 276 Ill. App. 2d 971, 982 (1995); *Oakley Transportation v. Zurich Insurance Co.*, 271 Ill. App. 3d 716, 727 (1995).    Here, all the allegations against the defendants are based on the sexual abuse that Avendano allegedly committed against the victims.    If not for the alleged sexual abuse that the defendants allegedly enabled to happen, there would be no lawsuit against the defendants.    Thus, as the allegations against Avendano and the defendants are not "wholly independent" from each other, the defendants are not entitled to coverage under the policy. See *Northbrook Property & Casualty Insurance Co.*, 194 Ill. 2d at 99.

¶ 26    In arguing that coverage analysis must focus on allegations of negligent hiring rather than on intentional sexual assault, the defendants rely on *American Family Mutual Insurance Co. v. Enright*, 334 Ill. App. 3d 1026, 1033-34 (2002).    That case is not germane because it does not address the policy language "in connection with" that is applicable to this case.

¶ 27    As a final argument, the defendants insist that it is improper at this stage of the proceedings to determine whether they are guilty of any wrongdoing that would preclude coverage.    In making this argument, the defendants rely on *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187 (1976). *Peppers* stands for the proposition that an insurance company is obligated to provide a defense if the underlying complaint alleges "both conduct for which the policy affords coverage and conduct for which it does not." *Id.* at 193.    Still, an insurer has no duty to defend where it is clear from

the face of the underlying complaint that the allegations fail to state facts that are even potentially within the policy's coverage. *Outboard Marine Corp. v. Liberty Mutual insurance Co.*, 154 Ill. 2d 90, 108 (1992). As we have already stated, in considering both the allegations in the underlying complaint and the unambiguous language of the insurance contract, ISDA does not owe the defendants a duty to defend.

¶ 28 We now turn to ISDA's cross-appeal. ISDA argues that although the trial court properly denied the defendants' motion for judgment on the pleadings on count II of ISDA's complaint, the trial court improperly determined that the underlying allegations of the complaints set forth an "occurrence" as defined in the CGL policy. The trial court's determination that there was an "occurrence" is significant because establishing an "occurrence" is a prerequisite to finding that ISDA owed the defendants a duty of defense.

¶ 29 Our supreme court has explained that "[a] party cannot complain of error which does not prejudicially affect it, and one who has obtained by judgment all that has been asked for in the trial court cannot appeal from the judgment." *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 386 (1983). "It is fundamental that the forum of courts of appeal should not be afforded to successful parties who may not agree with the reasons, conclusion or findings below." *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 414 Ill. 275, 282-83 (1953).

¶ 30 Here, ISDA prevailed below as the trial court determined that ISDA owed no duty to defend or indemnify the defendants regarding the underlying lawsuits. As ISDA was granted all the relief it requested, we must dismiss its cross-appeal and strike any arguments in support thereof. *Chicago Tribune v. College of DuPage*, 2017 IL App (2d) 160274, ¶ 28; *Rosenberger v. United Community Bancshares, Inc.*, 2017 IL App (1st) 161102, ¶ 21.

¶ 31                                        III. CONCLUSION

¶ 32    For the foregoing reasons, the judgment of the circuit court of Kane County in favor of ISDA is affirmed.   ISDA's cross-appeal is dismissed.

¶ 33    Appeal affirmed; cross-appeal dismissed.